**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02813-CMA-NYW

WELDESAMUEL GEBREMEDHIN, an individual,
TERHAS DESTA, an individual,
ABRHAM GIDAY, a minor, by and through his guardians and natural parents,
Weldesamuel Gebremedhin and Terhas Desta,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

      Defendant,

v.

GLENN TURNER, an individual,
VERONICA TURNER, an individual,
SPECIAL KIDS SPECIAL FAMILIES, INC., a Colorado corporation,
GRANITE STATE INSURANCE COMPANY, a Pennsylvania corporation,
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, a Pennsylvania
corporation,

      Third-Party Defendants.

---

## ORDER FOR MOTIONS TO DISMISS

---

This matter is before the Court on the Motions to Dismiss filed by Third-Party

Defendants Glenn and Veronica Turner, Special Kids Special Families, Inc., Granite

State Insurance Company, and National Union Fire Insurance Company of Pittsburgh.

Because American Family has failed to establish an actual case or controversy as to the

Turners, the Turners' Renewed Motion to Dismiss is granted. Further, because the

Turners have no right to indemnity from Special Kids Special Families, Inc. to which American Family can become subrogated, Special Kids Special Families, Inc.'s Renewed Motion to Dismiss is granted.  Lastly, because American Family's claims against Granite State Insurance Company and National Union Fire Insurance Company of Pittsburgh fail, their Renewed Motion to Dismiss is also granted.

## I.   **BACKGROUND**

This case arose out of an underlying personal injury suit for an alleged injury sustained by Plaintiff Abrham Giday, a minor, during his stay in foster care.  (Doc. # 83, 2.)  Because Abrham Giday is a minor, his parents and guardians, Plaintiffs Weldesamual Gebremedhin and Terhas Desta (collectively, "Plaintiffs") filed suit in state court against Third-Party Defendants Glenn and Veronica Turner (the "Turners") and Special Kids Special Families, Inc. ("SKSF"), which is insured by Granite State Insurance Company ("Granite State"), and National Union Fire Insurance Company of Pittsburgh ("NUFIC") ("State Litigation").[1]  (*Id.*)  At the time of the alleged acts in the State Litigation, Defendant American Family Mutual Insurance Company ("American Family"), under a Colorado Homeowners Policy, insured the Turners.[2]  (Doc. # 40.)  The Turners, believing themselves to be covered under the American Family Policy tendered the State Litigation to American Family for coverage.  (Doc. # 40, 2.)  American Family denied coverage.  (*Id.*)

---

[1] The underlying lawsuit was filed in state court in El Paso County and is captioned *Gebremedhin, et al v. Turner, et al.*  (Doc. # 40, 2.)
[2] The insurance policy was number 05-PB3893-01 for the policy period of February 20, 2009 to February 20, 2010.  (Doc. # 40, 2.)

Thereafter, pursuant to the Colorado Supreme Court's decision in *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010), the Turners entered into an agreement with Plaintiffs, pursuant to which the parties agreed that judgment would enter in the State Litigation in favor of Plaintiffs in an amount to be determined at a subsequent hearing before a neutral arbiter, and the Turners would assign all their rights, title, and interest in their claims against American Family to Plaintiffs.  (*Id.* at 3.)  The neutral arbiter entered judgment for Plaintiffs in the amount of $12,583,543.34.  (*Id.* at 3, n.2.) Similarly, SKSF, Granite State, and NUFIC also settled with Plaintiffs.  (Doc. # 83, 4.) The settlement agreement states that Plaintiffs "completely release and forever discharge" SKSF and its insureds, Granite State and NUFIC, from "any and all past, present, and future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, [and] expenses and compensation of any nature whatsoever."  (Doc. # 83-1.)  This release is "a fully binding and complete settlement among" the Plaintiffs, SKSF, and its insureds, Granite State and NUFIC.  (*Id.*)

In the instant case, Plaintiffs, by assignment, seek the benefits of the American Family homeowners policy issued to the Turners and any other damages to which the Turners may have been entitled as a result of American Family's failure to defend or participate in the State Litigation on behalf of the Turners.  (Doc. 83, 3.)  American Family, in turn, filed a third-party complaint against the Turners, SKSF, Granite State, and NUFIC, alleging claims for declaratory relief, subrogation, contribution, and breach of the covenant of good faith and fair dealing ("Third-Party Complaint").  (*Id.*)

3

On January 27, 2014, SKSF filed a motion to dismiss American Family's Third-Party Complaint for failure to state a claim upon which relief can be granted, alleging that the Turners have no right to indemnity from SKSF to which American Family can become subrogated.[3] (Doc. # 39, 2.) On January 31, 2014 and February 19, 2014, the Turners each filed a motion to dismiss the Third-Party Complaint for lack of subject matter jurisdiction, asserting that because they assigned all rights, title, and interest to their American Family claims to Plaintiffs, they are neither a necessary nor a proper Third-Party Defendant.[4] (Doc. # 40, 4.) On May 27, 2014, Granite State and NUFIC filed a motion to dismiss the Third-Party Complaint for failure to state a claim upon which relief may be granted, arguing that American Family has no right to recover its own tort liability from other insurers nor does it have any right of contribution or subrogation for payment of its indemnity obligations under its policy issued to the Turners.[5] (Doc. # 83, 2.)

## II.   DISCUSSION

## A.   GLENN AND VERONICA TURNER

American Family's Third-Party Complaint asserts one claim for relief against the Turners—requesting the Court to declare as a matter of law that American Family had

---

[3] American Family subsequently filed a First Amended Third-Party Complaint on May 13, 2014. (Doc. # 70.) SKSF filed a Renewed Motion to Dismiss on May 13, 2014, incorporating by reference its arguments from its Motion to Dismiss. (Doc. # 71.) American Family responded on June 6, 2014 (Doc. # 86), and SKSF did not reply.

[4] The Turners filed a Renewed Motion to Dismiss on July 3, 2014, incorporating by reference their arguments in their Motions to Dismiss. (Doc. # 95, ¶ 4.) American Family filed a Response on July 25, 2014 (Doc. # 104), to which the Turners replied on August 11, 2014 (Doc. # 109).

[5] American Family responded on July 3, 2014 (Doc. # 96), to which Granite State and NUFIC replied on July 24, 2014 (Doc. # 101).

no duty to defend or indemnify them in the State Litigation because its insurance policy with the Turners was rescinded (*void ab initio*).[6]  In their motions to dismiss, the Turners, pursuant to Fed. R. Civ. P. 12(b)(1), argue that because they assigned their rights, title, and interest in their claims against American Family to Plaintiffs, there exists no justiciable controversy between American Family and the Turners; and thus, the Court lacks jurisdiction.

### 1.    Standard of Review

As the language of the Declaratory Judgment Act makes clear, the Court must consider both jurisdiction and the prudence of maintaining the action: "[i]n a case of actual controversy within its jurisdiction . . .  any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. 2201(a); K*unkel v. Continental Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989).

Thus, the court must analyze two separate hurdles in a declaratory judgment action.  *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008); *Kunkel*, 866 F.2d at 1273.  First, the case must be based on an "actual controversy," a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement.  *Surefoot*, 531 F.3d at 1240; *see, e.g.*, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40, 57 (1937) ("The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional

---

[6] Mr. and Mrs. Turner filed separate Motions to Dismiss (Doc. ## 40, 51); however because their motions are identical except for their respective names, the Court will review the two motions together.

provision and is operative only in respect to controversies which are such in the

constitutional sense."). "Second, even where a constitutionally cognizable controversy

exists, the Act stipulates only that district courts 'may'—not 'must'—make a declaration

on the merits of that controversy; accordingly, we have held that district courts are

entitled to consider a number of case-specific factors in deciding whether or not to

exercise their statutory declaratory judgment authority." *Surefoot*, 531 F.3d at 1240;

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982–83 (10th Cir. 1994) (stating that

"the district court is not obliged to entertain every justiciable claim brought before it" and

setting out the factors that a district court should consider).

 The subject matter jurisdiction of this Court is limited by Article III, § 2 of the

United States Constitution, which allows judicial consideration of "cases" or

"controversies." *Kunkel*, 866 F.2d at 1273. Thus, a declaratory judgment action must

be "definite and concrete, touching the legal relations of parties having adverse legal

interests, must be real and substantial and admit of specific relief through a decree of a

conclusive character, as distinguished from an opinion advising what the law would be

upon a hypothetical state of facts." *Surefoot*, 531 F.3d at 1244 (citing *MedImmune, Inc.

v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)) (internal quotation marks omitted). Thus,

"the question in each case is whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *MedImmune*, 549 U.S. at 127.

The existence of a case or controversy is a matter of degree. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The test does not "draw the brightest of lines between those declaratory judgment actions that satisfy the case-or-controversy requirement and those that do not." *Id.* The burden of establishing an actual case or controversy is on the party seeking declaratory judgment. *Cardinal Chem. v. Morton Intl.*, 508 U.S. 83, 95 (1993).

### 2.      Analysis

In the instant case, the *Nunn* agreement between Plaintiffs and the Turners divested the Turners of all rights, title, and interest they had to claims against American Family for collection of the judgment entered in the State Litigation, including the rights to prosecute those claims in a civil action and retain the proceeds from such an action. American Family, as the party seeking declaratory judgment, has the burden of establishing an actual case or controversy. American Family asserts four arguments as to why the Court should deny the Turners' Motions to Dismiss: (1) the subject matter of the State Litigation is distinct from the subject matter in the instant case; (2) the *Nunn* agreement did not assign to Plaintiffs the Turners' right to rescind their homeowners policy with American Family; (3) a declaratory judgment will implicate any other potential claims related to foster care children that were in the Turners' care; and (4) a declaratory judgment may directly implicate the validity of the *Nunn* agreement.[7]

---

[7] The Court is perplexed that American Family's argument is based on the legal standards governing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) rather than pursuant to Fed. R. Civ. P. 12(b)(1), which the Turners rely upon. Nevertheless, the Court will address each argument in turn.

American Family contends a declaratory judgment is proper because the subject matter of the State Litigation is distinct from the subject matter in the instant case as in this case, American Family seeks to void "the Turners' policy in total, not just with respect to this specific case."  American Family further explains, "[i]f the policy is held void, [it] will have no obligation to defend or indemnify the Turners for any other claims that occurred during the policy period."  However, the concurrence of these contingent events, necessary for injury to be realized, is too speculative to warrant anticipatory judicial determinations.  *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1380 (10th Cir. 2011) (citing *Eccles v. Peoples Bank*, 333 U.S. 426, 432 (1948)).  American Family's grievance—that other claims may occur with regard to the Turners during the policy period—is too remote and too speculative in nature.  In fact, American Family uses words such as "may arise" and "should other claims arise" in its Response (Doc. # 104), which further demonstrates that its arguments are too speculative to warrant anticipatory judicial determinations.  Therefore, American Family has failed to demonstrate that a declaratory judgment is proper based on its first argument.

Next, American Family argues that the *Nunn* agreement did not assign to Plaintiffs the Turners' right to rescind their homeowners policy in total with American Family; therefore, the Turners must be parties to the action.  American Family alleges that a declaration would collaterally estop the Turners from suing American Family should any claims relating to the homeowners policy arise in the future.  However, potential claims that may arise in the future are too speculative to warrant a declaratory judgment.  As such, American Family has failed to demonstrate its need for the Court to

declare the policy void *ab initio*.  Thus, this claim also fails to demonstrate that a declaratory judgment is proper.

Third, American Family claims that a declaratory judgment will implicate any other potential claims related to foster care children that were in the Turners' care; and, thus, the Turners are proper third-party defendants.  This claim, however, is too remote and speculative in nature.  The only claim that relates to a foster care child in the Turners' care is based on the State Litigation.  American Family's premise—that other potential claims related to foster care children may be implicated—is purely hypothetical and lacks sufficient immediacy and reality to warrant the Court's exercise of jurisdiction over the Turners.

Lastly, American Family argues that this Court should declare the Turners' policy void because it would render the *Nunn* agreement meaningless.  "[A] court in the exercise of its discretion should declare the parties' rights and obligations when the [declaratory] judgment will (1) clarify or settle the legal relations in issue and (2) terminate or afford relief from the uncertainty giving rise to the proceeding."  *Kunkel*, 866 F.2d at 1275.  Even if this Court deems the *Nunn* agreement invalid, it will not clarify the legal relationship between American Family and the Turners, nor would it terminate or afford relief to American Family from the uncertainty surrounding its obligations because, pursuant to the *Nunn* agreement, the Turners assigned all their rights, title, and interest in their claims against American Family to Plaintiffs.  Thus, if the Court deems the *Nunn* agreement invalid, it would affect only Plaintiffs' claims.  Accordingly,

this Court, in its discretion, declines to declare the rights and obligations of American Family as to the Turners.

Therefore, American Family has failed to establish an actual case or controversy as to the Turners.  Thus, the Turners' renewed motion to dismiss is granted.

## B.   SPECIAL KIDS SPECIAL FAMILIES, INC.

American Family requests a declaratory judgment and asserts a claim of subrogation as to SKSF.

### 1.   Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed due to the plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  *See id.*; *see also Golan v. Ashcroft*, 310 F.Supp.2d 1215, 1217 (D. Colo. 2004).  The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting

and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation

marks and citations omitted; alterations incorporated)).

Further, "only a complaint that states a plausible claim for relief survives a motion

to dismiss [under Rule 12(b)(6)].  Determining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense.  But where the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Id.* at

679 (quotation marks omitted).

The purpose of this pleading requirement is two-fold: "to ensure that a defendant

is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate

defense, and to avoid ginning up the costly machinery associated with our civil

discovery regime on the basis of a largely groundless claim."  *Kan. Penn Gaming, LLC

v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotation marks omitted).

### 2.    Analysis

SKSF asserts American Family's claim fails pursuant to Fed. R. Civ. P. 12(b)(6)

because the Turners have no indemnity rights against SKSF.  In agency law, "[a]

principal is vicariously liable for its agent's acts committed within the scope of the

agency."  *City of Aurora ex rel. Util. Enter. v. Colorado State Eng'r*, 105 P.3d 595, 622

(Colo. 2005).  However, "[t]his right [to indemnity] exists, for instance, where the

principal has directed an innocent agent to do an act which is tortious."  *Premier

Members Fed. Credit Union v. Block*, 2013 COA 128, ¶ 39, 312 P.3d 276, 281 (citing

Restatement (Second) of Agency § 438 cmt. B).  A principal directs an innocent agent to do an act which is tortious when the principal gives express orders or specially directs his agent to commit the act.  *Marron v. Helmecke*, 67 P.2d 1034, 1035 (Colo. 1937).

In the instant case, there are no facts that SKSF directed the Turners to engage in a tortious act.  Although American Family contends Plaintiffs "suffered as a result of SKSF placing a child it suspected had a skull fracture with the Turners who it is alleged SKSF did not provide with proper training or experience to care for such a child," there are no facts that suggest SKSF gave express orders or directed the Turners to commit a tortious act, i.e., taking Plaintiff Giday to urgent care several hours after he "vomited, stopped breathing, went limp, and became unresponsive."  Furthermore, judgment was entered for the Plaintiffs in the amount of $12,583,543.34 against the Turners.  Thus, the Turners are not innocent agents. Therefore, the Turners have no right to indemnity from SKSF to which American Family can become subrogated.

Lastly, because SKSF is not implicated in the lawsuit otherwise,[8] there is no case or controversy between SKSF and American Family.  Thus, the declaratory judgment claim fails.  *Kunkel*, 866 F.2d at 1273 ("Recognizing that under our Constitution the federal judicial power extends only to "cases" or "controversies," U.S. Const. Art. III, § 2,

---

[8] American Family, in its Response (Doc. # 56), argues that its Third-Party Complaint alleges a plausible claim for contribution against SKSF.  However, American Family did not plead such a theory and is not permitted to "amend its pleadings through its opposition to the motion to dismiss."  *See, e.g.*, *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) (citing with approval *Perkins v. Silverstein*, 939 F.2d 463, 470 n.6 (7th Cir. 1991) ("a complaint may not be amended by briefs in opposition to a motion to dismiss")).  Accord *Kearney v. Dimanna*, 195 Fed. App'x. 717, 721 n.2 (10th Cir. 2006) (unpublished) (declining to consider claims not pleaded in complaint and quoting decision for proposition that courts "are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint").

Congress confined the declaratory remedy "to cases of actual controversy.").

Therefore, SKSF's renewed motion to dismiss is granted.

## C.   GRANITE STATE AND NUFIC

American Family requests a declaratory judgment and asserts claims of

subrogation, contribution, and breach of covenant of good faith and fair dealing as to

Granite State and NUFIC.

### 1.   Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed due to

the plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal

under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

absence of sufficient facts alleged under a cognizable legal theory.  *See id.*; *see also*

*Golan v. Ashcroft*, 310 F.Supp.2d 1215, 1217 (D. Colo. 2004).  The Rule 12(b)(6)

standard tests "the sufficiency of the allegations within the four corners of the complaint

after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th

Cir. 1994).

Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must

contain a "short and plain statement of the claim showing that the pleader is entitled to

relief."  This pleading standard "does not require detailed factual allegations, but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A

pleading that offers labels and conclusions or a formulaic recitation of the elements of a

cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting

and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted; alterations incorporated)).

Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss [under Rule 12(b)(6)].  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks omitted).

The purpose of this pleading requirement is two-fold: "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotation marks omitted).

### 2.      Analysis

#### a.      Declaratory Judgment and Subrogation

To bring a declaratory judgment action against Granite State and NUFIC, American Family must have standing to bring a declaratory judgment against SKSF's insurers. *Farmers Ins. Exch. v. Dist. Court*, 862 P.2d 944, 949 (Colo. 1993).  A plaintiff has no standing to bring a declaratory judgment against the insurance company unless the insured becomes liable to pay. *Id.* at 948.  Because the Court determined American

Family has no claims against SKSF, American Family cannot bring a declaratory judgment action against Granite State and NUFIC.

Additionally, because American Family has no claims against SKSF, "no greater right would accrue to their substitute," i.e., subrogation does not extend to Granite State and NUFIC. *Hartford Acc. & Indem. Co. v. Colorado Nat. Bank*, 40 P.2d 254, 256 (Colo. 1934); *D.R. Horton, Inc.-Denver v. Travelers Indem. Co. of Am.*, 860 F. Supp. 2d 1246, 1253 (D. Colo. 2012) (citing *United Fire Grp. v. Powers Electric, Inc.*, 240 P.3d 569, 573 (Colo. App. 2010)) ("Subrogation claims are derivative, meaning that a subrogee insurer's rights extend only as far as the rights of its insured.").

### b.    Breach of Good Faith

American Family also argues that an excess carrier may sue a primary carrier for breach of good faith in two ways: (1) as subrogated to the rights of its insured; and (2) in its own right for independent duties owed from the primary carrier to the excess carrier.

### 1)    Equitable Subrogation

American Family contends that through equitable subrogation it may enforce duties of good faith that Granite State and NUFIC owed to the Turners.

"[E]quitable subrogation is an equitable principle that allows a party secondarily liable who has paid the debt of the party who is primarily liable [to] institute a recovery action in order to be made whole." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 833 (Colo. 2004) (citation omitted).  The Colorado Supreme Court has outlined five factors as conditions precedent to the application of equitable subrogation:

> (1) the subrogee made the payment to protect his or her own interest; (2) the subrogee did not act as a volunteer; (3) the subrogee was not primarily

> liable for the debt paid; (4) the subrogee paid off the entire encumbrance; and (5) subrogation would not work any injustice to the rights of the junior lienholder.

*Hicks v. Londre*, 125 P.3d 452, 456 (Colo. 2005). "In the insurance context, courts generally apply the doctrine of equitable subrogation to allow an insurer, who has made payment to its insured for a loss caused by a third party, to seek recovery from the third party for such payment." *Cotter Corp.*, 90 P.3d at 833. "This prevents the insured from being unjustly enriched by recovering from the insurer as well as the third party, and prevents the third party from escaping its liability for the loss." *Id.*

In the instant case, American Family does not allege that it has made any payments to the Turners, its insureds. Thus, American Family cannot satisfy the first condition precedent to the application of equitable subrogation. Because the Court has determined that American Family has not met the first factor of the conditions precedent as outlined by the Colorado Supreme Court, the Court need not address the additional requirements to find a claim for equitable contribution. Thus, American Family may not enforce a claim of equitable subrogation against Granite State and NUFIC.

### 2) Direct Cause of Action

Next, American Family, as excess insurer to the Turners, alleges it has a bad faith claim owed to it directly from Granite State and NUFIC, the primary insurers.

There is no controlling authority on whether Colorado recognizes a duty of good faith owed by a primary insurer to an excess insurer. When the Colorado Supreme Court has not yet addressed an issue, this Court must attempt to predict how that court would decide the question. *Blackhawk-Cent. City Sanitation Dist. v. Am. Guarantee &*

*Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000).  "In making this determination we may look to other state court decisions, federal decisions, and the general trend and weight of authority."  *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 244 F.3d 777, 780 (10th Cir. 2001) (citing *Farmers Alliance Mut. Ins. Co. v. Salazar*, 77 F.3d 1291, 1295 (10th Cir. 1996)).

In a similar case involving Oklahoma law, the Tenth Circuit determined that the Oklahoma Supreme Court would conclude that "an excess insurer cannot assert a direct cause of action against a primary insurer that alleges the primary insurer owed the excess insurer an implied duty of good faith and fair dealing."  *Steadfast Ins. Co. v. Agric. Ins. Co.*, 548 F. App'x 544, 546 (10th Cir. 2013).  In reaching this conclusion, the Tenth Circuit noted that such an outcome is consistent with the position of the majority of courts in other jurisdictions.[9]  *Id.*  Further, a division of this court observed, "the national trend and weight of authority do not recognize a direct duty running from the primary to the excess insurer."  *Okland Const. Co. v. Phoenix Ins. Co.*, No. 11-CV-02652, 2013 WL 3866608, at *6 (D. Colo. July 26, 2013) (citing *PHICO Ins. Co. v. Aetna Casualty & Surety Co. of Amer.*, 93 F. Supp. 2d 982, 989 (S.D. Ind. 2000) (citing few

---

[9] *See Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1178 (7th Cir. 1994) (noting that just a "handful of cases from New York and New Jersey" "hint" that a primary insurer owes an excess insurer a duty of care, while "the overwhelming majority of American cases describe the duty that a primary insurer owes an excess insurer as one derivative from the primary insurer's duty to the insured," citing cases); *Truck Ins. Exch. of Farmers Ins. Grp. v. Century Indem. Co.*, 887 P.2d 455, 460 (Wash. Ct. App. 1995) ("While most courts have adopted the theory of equitable subrogation, only a minority have found the primary insurer owes a direct duty of good faith to the excess insurer."); 28 Am.Jur. Proof of Facts 3d 507 § 14 (2011) (noting that, while "[i]n a few jurisdictions, an excess insurer may directly pursue an action against a primary insurer for a breach of a duty owed to the excess insurer, . . . [m]ost courts that have been asked to determine if there is a direct duty of a primary insurer to an excess insurer (or a direct cause of action) have rejected the idea that there is such a duty").

17

cases suggesting primary insurer owes direct duty of care to excess insurer, but noting that majority of jurisdictions define duty as derivative of that owed to the insured)).

The only case cited by American Family concerning this claim is *Hawkeye-Sec. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 260 F.2d 361 (10th Cir. 1958). However, in *Hawkeye-Security Insurance Co.*, the court ruled that an insurance company can be held liable for failing to appeal only in instances of fraud or bad faith. *See Telecom Italia S.p.A. v. L-3 Commc'ns Corp.*, 335 F. App'x 770, 773 (10th Cir. 2009) (citing *Hawkeye-Security Insurance Co.* to confirm that "[i]t has long been the law of this circuit that an attorney employed to engage in litigation has no right to prosecute an appeal"). Thus, *Hawkeye-Sec. Ins. Co.* is distinguishable.

For the foregoing reasons, the Court concludes that the Colorado Supreme Court would apply similar reasoning to the circumstances presented here to preclude American Family from suing Granite State and NUFIC on a claim alleging that Granite State and NUFIC directly owed it a duty of good faith and fair dealing.

### c.   Contribution

Lastly, American Family argues it has an equitable and statutory contribution claim against Granite State and NUFIC.

### 1)  Statutory Contribution

In this case, American Family has no right to seek statutory contribution from Granite State and NUFIC. Under Colorado law, statutory contribution is unavailable against a tortfeasor who settles with a plaintiff:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one or two or more persons liable in tort for the same

> injury or the same wrongful death:  It discharges the tortfeasor to whom it
> is given from all liability for contribution to any other tortfeasor.

Colo. Rev. Stat. § 13-50.5-105(1)(a).  In the Settlement Agreement between Plaintiffs,

SKSF, Granite State, and NUFIC, it states:

> Plaintiffs hereby completely release and forever discharge [SKSF] and
> Insurers from any and all past, present, and future claims, demands,
> obligations, actions, causes of action, rights, damages, costs, losses of
> services, expenses, and compensations of any nature whatsoever,
> whether based on a tort, contract, or other theory of recovery, which the
> Plaintiffs now have, or which Plaintiffs may hereafter accrue or otherwise
> be acquired, on account of, or may in any way grow out of, or which are
> the subject of the Complaint (and all related pleadings) including, without
> limitation, any and all known or unknown claims for bodily, personal, and
> economic injuries to Plaintiffs which have resulted or may result from the
> alleged acts or omissions of the Defendant.

(Doc. # 83-1).  The Agreement defines "Insurers" as Granite State and NUFIC.

In this case, American Family has not sufficiently alleged that Granite State and

NUFIC settled with Plaintiffs in anything other than good faith.  American Family's

argument—that "Plaintiffs bring this action via an assignment of rights from the

Turners . . . [t]herefore whether or not the Giday Plaintiffs agreed (in their own name) to

release Granite State and [NUFIC] is irrelevant"—is unconvincing.  The Settlement

Agreement specifically states Plaintiffs completely released Granite State and NUFIC

from any claims they may have acquired.  Plaintiffs acquired the right to sue American

Family from the Turners; and this acquired right stems from the State Litigation.  Thus,

American Family is not entitled to statutory contribution from Granite State or NUFIC.

*Brochner v. W. Ins. Co.*, 724 P.2d 1293, 1299 (Colo. 1986).

### 2) Equitable Contribution

American Family similarly fails in its claim for equitable contribution against

Granite State and NUFIC.

"Equitable contribution is recognized under Colorado law and is a means of

apportioning a loss between two or more insurers who cover the same risk so that each

insurer pays its fair share of the common obligation." *Cont'l W. Ins. Co. v. Colony Ins.*

*Co.*, No. 13-CV-01425, 2014 WL 4695100, at *6 (D. Colo. Sept. 19, 2014).  Granting

equitable remedies lies within the discretion of the trial court.  *La Plata Med. Ctr.*

*Associates, Ltd. v. United Bank of Durango*, 857 P.2d 410, 420 (Colo. 1993) (citing

Restatement (Second) of Contracts § 357 cmt. c (1981)).  Generally, equitable

contribution is available to an insurer who paid the insured and then seeks equitable

contribution from any co-insurers owning the same duty to defend.  *See, e.g.*, *Cont'l W.*

*Ins. Co.*, 2014 WL 4695100, at *6 (finding insurer entitled to equitable contribution from

another insurer who breached its duty to defend when the former provides a complete

defense to an insured against a common risk); *Allstate Ins. Co. v. W. Am. Ins. Co.*, No.

09-CV-00967, 2011 WL 11065655, at *3 (D. Colo. Nov. 21, 2011) (stating there is

potentially a claim for equitable contribution when an insurer settled all claims against its

insureds and those claims triggered coverage by another insurer); Nat'l Cas. Co. v.

Great Sw. Fire Ins. Co., 833 P.2d 741, 748 (Colo. 1992) (insurer is entitled to equitable

contribution for defense costs and settlement payment when another insurer had

concurrent coverage).  Without equitable contribution, an insurer could be rewarded for

refusing to honor its contractual obligation to its insured. *Allstate Ins. Co.*, 2011 WL 11065655, at *3.

In the instant case, American Family, the insurer who failed to defend its insureds in the State Litigation, is requesting equitable contribution from Granite State and NUFIC, insurers who provided a defense to its insureds in the State Litigation. There appears to be little equitable reason now for shifting to Granite State and NUFIC a pro rata share of American Family's liability when American Family could have participated in the State Litigation and Settlement Agreement between Plaintiffs and its insureds.[10] Rewarding equitable contribution to American Family would award it for refusing to defend its insured in the State Litigation. Indeed, under all the circumstances of this case, the Court does not believe that American Family is in any position to invoke equity in order to obtain contribution to Plaintiffs' claims.

### III.  CONCLUSION

Accordingly, it is ORDERED that Glenn and Veronica Turner's Renewed Motion to Dismiss (Doc. # 95) is GRANTED. It is

FURTHER ORDERED that Special Kids Special Families, Inc.'s Renewed Motion to Dismiss (Doc. # 71) is GRANTED. It is

---

[10] This case is unlike *D.R. Horton, Inc.–Denver v. Travelers Indemnity Co. of America*, No. 10–CV–02826, 2012 WL 5363370 (D. Colo. Oct. 31, 2012), which American Family cites, because in this case the co-insurers to American Family—Granite State and NUFIC—actually defended its insured in the State Litigation and settled with Plaintiffs concerning their claims stemming from the State Litigation. If anything, *D.R. Horton, Inc.–Denver* potentially supports a claim that Granite State and NUFIC could seek equitable contribution from American Family, but not the other way around.

FURTHER ORDERED that Granite State Insurance Company and National Union Fire Insurance Company of Pittsburgh's Motion to Dismiss (Doc. # 83) is GRANTED.  American Family's Third-Party Complaint is DISMISSED IN ITS ENTIRETY.  It is

FURTHER ORDERED that, pursuant to Fed. R. Civ. P. 54(d)(1), Third-Party Defendants shall have their costs by filing a Bill of Costs with the Clerk of the Court within ten days of the entry of judgment.  Finally, it is

FURTHER ORDERED that American Family Mutual Insurance Company's "Motion to Compel Third Party Defendant Granite State Insurance Company to Produce Its Claim File For In Camera Review and Production And Request for Expedited Ruling" (Doc. # 137), "Motion to Compel Veronica Turner and Glen Turner to Produce Communications with Tiffaney Norton" (Doc. # 148), and Granite State Insurance Company and National Union Fire Insurance Company of Pittsburgh "Unopposed MOTION to Amend/Correct/Modify Scheduling Order" (Doc. # 173) are DENIED AS MOOT.

DATED:  March ___31___, 2015

BY THE COURT:


_____
CHRISTINE M. ARGUELLO
United States District Judge