**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-02813-CMA-NYW

WELDESAMUEL GEBREMEDHIN, an individual,
TERHAS DESTA, an individual,
ABRHAM GIDAY, a minor, by and through his guardians and natural parents,
WELDESAMUEL GEBREMEDHIN and TERHAS DESTA,

Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

Defendant.

_____

**ORDER ON PENDING DISCOVERY MOTIONS**
_____

Magistrate Judge Nina Y. Wang

This matter comes before the court on Counsel for Dismissed Parties Veronica and Glen Turner Tiffaney Norton's Motion to Quash and for Protective Order, filed on June 15, 2015 [#216] (also "Norton Motion to Quash"); Dismissed Parties Granite State Insurance Company ("Granite State") and National Union Fire Insurance Company of Pittsburgh's ("National Union") Motion to Quash and for Protective Order as to American Family's Notices of Rule 30(b)(6) Depositions, filed on June 17, 2015 [#218] ("Rule 30(b)(6) Depositions Motion to Quash"); and Dismissed Parties Granite State and National Union's Amended Motion to Quash and for Protective Order Re Gorski Deposition, filed June 19, 2015 [#224] ("Gorski Motion to Quash") (collectively, the "Motions"). In addition, Defendant American Family Mutual Insurance Company

("American Family") filed an Unopposed Motion to Reset Pre-Trial Conference and to Extend Time to Take Depositions ("Motion to Reset Pre-Trial Conference and to Extend Time"). [#235]. These Motions were referred to this Magistrate Judge pursuant to the Order Referring Case dated October 21, 2013 [#6], the Reassignment dated February 9, 2015 [#158], and the Memoranda dated June 17, 2015 [#219], June 22, 2015 [#225]; and July 14, 2015 [#236]. The court has carefully considered the Motions and related briefing, the arguments of the Parties' counsel at the July 1, 2015 oral argument on the Motions, the court file, and the applicable case law. For the reasons discussed below and as set forth herein, the court GRANTS IN PART and DENIES IN PART the Norton Motion to Quash, GRANTS IN PART and DENIES IN PART Granite State and National Union's Rule 30(b)(6) Motion to Quash, DENIES Granite State and National Union's Gorski Motion to Quash, and GRANTS American's Family's Motion to Reset Pre-Trial Conference and Extend Time.

## BACKGROUND

### I. Plaintiffs' Complaint.

Plaintiffs Weldesamuel Gebremedhin ("Mr. Gebremedhin"), Terhas Desta ("Ms. Desta"), and Abrham Giday ("Abrham") (collectively "Plaintiffs") originally filed their Complaint in District Court for the City and County of Denver in the State of Colorado on October 1, 2013. [#1-2]. On October 15, 2013, American Family removed the action to federal court in this district under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a) on the basis of diversity jurisdiction. [#1]. Plaintiffs' underlying Complaint in this action was re-docketed as [#3]; the following is a recitation of certain relevant allegations from same.

Mr. Gebremedhin and Ms. Desta are the birth parents of Abrham, who remains a minor child. [#3 at ¶ 2]. On April 24, 2009, Abrham was placed in the care of temporary foster parents Veronica Turner and Glen Turner (individually, "Ms. Turner" and "Mr. Turner," and collectively, the "Turners") due to a misdiagnosed skill fracture. [*Id.* at ¶ 8]. Within less than a week of that date in the early morning hours of April 30, 2009, Abrham became seriously ill while within the care of the Turners. [*Id.*]. Ms. Turner took Abrham to an urgent care facility, where Ms. Turner was instructed by a physician to immediately take the child to the nearest emergency room. [*Id.*] Ms. Turner failed to do so. [*Id.*] When Abrham was returned to the custody of his parents Mr. Gebremedhin and Ms. Desta at some point during the evening on April 30, 2009, "he began twitching and shaking and was transported to the hospital via ambulance where he was treated for a severe traumatic brain injury and other injuries." [*Id.*]

Plaintiffs subsequently filed a lawsuit sounding in negligence in a Colorado state court against the Turners based on the resulting injuries to Abrham (the "Underlying Litigation"). [*Id.* ¶ 9]. Plaintiffs also sought recovery as against "Special Kids Special Families . . . which had allegedly trained, employed, and certified the Turners as foster parents." [*Id.*]

In response, the Turners tendered the "Underlying Lawsuit to American Family and sought a defense and indemnification for the claims asserted against them by the Giday Plaintiffs" based on a homeowners insurance policy. [*Id.* at ¶ 11]. The Complaint alleges that American Family declined to do so, and "refused" to attend a July 10, 2012 mediation between the parties to the Underlying Lawsuit; shortly thereafter, Plaintiffs resolved their claims as against Special Kids Special Families. [*Id.* at ¶¶ 11-14].

On October 12, 2012, American Family allegedly expressly advised the Turners that American Family did not intend to participate in the Turners' defense in the Underlying Lawsuit, or to provide indemnification for any liability flowing from it.  [*Id.*]  On November 29, 2012, American Family "was apprised that the Giday Plaintiffs were willing to resolve their claims against the Turners in exchange for payment of the Policy's $500,000 liability limits within 21 days."  [*Id.* at ¶ 15].  American Family again "maintained its denial of a defense and indemnity."  [*Id.* at ¶ 16].

Default was entered as against the Turners, who "assigned to the Giday Plaintiffs their rights, title, and interest in their claims against American Family for collection of the judgment entered against them in the Underlying Lawsuit, including their rights to prosecute those claims in a civil action and keep the proceeds of those claims."  [*Id.* at ¶ 19].  Pursuant to the assignment, on May 23, 2013, an arbitral hearing as to damages was held.  [*Id.* at ¶ 20].  Shortly thereafter, an arbitration award of $14,533,606.86 was entered as against the Turners, and judgment in the amount of $12,583,543.34 was entered in the Underlying Lawsuit (reflecting a set off as to moneys previously received by Plaintiffs in their settlement with Special Kids Special Families).  [*Id.*  at ¶ 21] .

The settlement agreement between Plaintiffs and the Turners included a covenant not to execute the judgment awarded in the underlying litigation against the Turners.  [#148-5 at 2 ¶ G].  As noted in Plaintiffs' Complaint, the potential enforceability of such agreements under Colorado substantive law was again addressed by the

Colorado Supreme Court in *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010). [*Id.* ¶ 18].[1]

## II.   American Family's Answer and Third-Party Complaint.

On October 7, 2013, American Family filed its answer.  [#7].  American Family's Eleventh Affirmative defense asserted as follows:   "The default judgment in the Underlying Lawsuit is void and/or unenforceable as to this Defendant as it was a product of collusion and/or a civil conspiracy."  [*Id.* at 5].

On December 11, 2013, filed a Third Party Complaint against the Turners, Special Kids Special Families, Granite State Insurance Company ("Granite State"), and National Union Fire Insurance Company of Pittsburgh ("National Union").  [#16].   In reaction to motions to dismiss filed by the Third Party Defendants, American Family filed a First Amended Third Party Complaint. [#70].  The core of the Third Party Complaint was premised on assertions that American Family owed no duty of defense or indemnification to the Turners under the American Family policy at issue, and that it was in fact Granite State and/or National Union that as "primary insurers" owed (and breached) a duty of defense as to the Turners.  [*Id.*].  On the basis of these and other allegations, American Family brought claims as against the Turners, Special Kids Special Families, Granite State, and National Union Fire (collectively, the "Third-Party

---

[1] Under Colorado law, such agreements are now commonly referred to as *Nunn-Bashor* agreements.   *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 117 (Colo. 2010) (explaining that the "term '*Bashor* Agreement' is derived from our case *Northland Ins. Co. v. Bashor*, 177 Colo. 463, 494 P.2d 1292 (Colo. 1972), and has since been used to refer to settlement agreements involving a formal assignment of claims against an insurer to a third party and a stipulated judgment coupled with a covenant not to execute.").

Defendants"), asserting claims for declaratory relief, subrogation, contribution, and breach of the covenant of good faith and fair dealing.  [*Id.*].

The Third Party Defendants moved to dismiss these claims. [#71, #83, #95]. On March 31, 2015, the court entered an ordered dismissing the First Amended Third Party Complaint in its entirety, and also mooting then pending motions to compel further production of documents based on party-directed discovery propounded by American Family upon the Turners, Granite State, and National Union Fire.  [#177].

## III.   Pending Motions.

Three fully briefed discovery motions that were argued before the court on July 1, 2015 are now before the court for resolution. Tiffaney Norton, the attorney hired by Granite State to represent the Turners with respect to resolution of the Underlying Litigation, has filed a Motion to Quash Subpoena and Motion for Protective Order as to a subpoena served upon her by American Family.   [#216].   Ms. Norton principally argues that her deposition should not be taken because the proposed lines of inquiry are likely to intrude upon information protected by attorney-client privilege, the attorney work-product doctrine, or some other applicable privilege or protection from disclosure. [*Id.*]  In response, American Family argues that Ms. Norton's deposition should proceed because she may be able to offer non-privileged testimony going to a number of different issues relevant to the subject matter of this litigation.  [#227].  American Family takes the position that no heightened showing of need should be required of a party who seeks to take an adverse party's counsel's deposition, asserting that as "long as Ms. Norton likely has knowledge of discoverable facts not protected by privilege, she may be deposed."  [*Id.* at 13].

In addition, Granite State and National Union have filed a Motion to Quash and Motion and for Protective Order as to American Family's Notices of Rule 30(b)(6) Depositions to each of their organizations.  [#218].  Granite State and National Union argue that some or all of the topics are relevant only to the claims raised by American Family's previously dismissed Third Party Complaint, rather than to the claims and defenses remaining at issue now in the litigation.  [*Id.* at 6-10].  As to the remainder of the topics, Granite State and National Union contend that they are overbroad, lack particularity, are cumulative of prior discovery, and/or are likely to intrude upon certain privileges and protections, including the attorney-client privilege.  [*Id.* at 9-12].

Granite State and National Union have also filed a Motion to Quash and for Protective Order Re: Gorski Deposition.[2]  [#221].  Ronald Gorski is a "former employee who was a claims examiner on behalf of Granite State and handled the underlying claim against Special Kids Special Families, Inc. [] and the Turners."  [*Id.* at 2].  Granite State and National Union argue that Mr. Gorski does not have relevant, non-privileged testimony to provide regarding American Family's collusion affirmative defense or any other claim or defense still at issue.  [*Id.* at 5-7].  Granite State and National Union also argue that the deposition would impose an undue burden on former employee Mr. Gorski, because any possible inquiry would lack relevance, and because Mr. Gorski would need to take time away from work and family to attend any deposition.  [*Id.*].

---

[2] As an initial matter, a "party generally lacks standing to challenge a subpoena issued to a non-party absent a claim of privilege or a proprietary interest in the subpoenaed matter."  *United States v. Tucker*, 249 F.R.D. 58, 60 n. 3 (S.D.N.Y. 2008).  However, counsel for Granite State and National Union indicated that they represented Mr. Gorski for the purposes of this case and the deposition during the hearing on July 1.  Therefore, while the Gorski Motion to Quash would be more properly filed on behalf of Mr. Gorski rather than Granite State and National Union, this court will proceed with its disposition.

**ANALYSIS**

I.    **Standard of Review**

    A.    **Grounds for Entry of Protective Order and/or Order Quashing Subpoena**

In considering whether information is subject to discovery, the court exercises its discretion while balancing the interests and burdens of all parties.  The general test of discoverability is whether the information sought by a discovery request is "relevant to any party's claim or defense."   Fed. R. Civ. P. 26(b)(1). This is a broad standard meant to allow the parties to discover the information necessary to prove or disprove their cases.  *Bagher v. Auto-Owners Insurance Company*, No. 12–cv–00980–REB–KLM, 2013 WL 5417127, at *5 (D. Colo.  Sept. 26, 2013).   Upon a showing of "good cause" by the proponent of discovery, an even broader standard of "any matter relevant to the subject matter involved in the action" may be applied.  *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009).   Despite the presumptive discoverability of relevant, non-privileged information, when the relevance of a discovery request is not apparent on the face of the request itself, the proponent of discovery bears the burden of making an initial, rebuttable showing of relevance.  *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

The proper scope of discovery is further bounded by the principles of proportionality. Fed. R. Civ. P. 26(b)(2)(C); *see also Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).   Indeed, Rule 26(b)(2)(C) allows a court to limit discovery on motion or on its own if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive;

(2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  Fed. R. Civ. P. 26(a)(2)(C).

A trial court may find that discovery into matters not relevant to the case imposes a *per se* undue burden.  *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586–87 (D. Kan. 2008) (finding topics in a 30(b)(6) notice irrelevant and granting a protective order as to those topics).  A protective order may "forbid[ ]" inquiry into certain matters, or "limit[ ]" the scope of disclosure or discovery to certain matters." Fed. R. Civ .P. 26(c)(1)(D).

Applying these principles, the court considers the appropriate scope of depositions, under Rule 30(b)(6) or Rule 45 of the Federal Rules of Civil Procedure.  In doing so, the court reviews the Rule 30(b)(6) topics as articulated. For a Rule 30(b)(6) deposition to function effectively, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Berwick v. Hartford Fire Ins. Co.*, No. 11–cv–01384–MEH–KMT, 2012 WL 573939, at *2 (D. Colo. Feb. 21, 2012).  If a 30(b)(6) deposition notice includes topics that as framed suggest that a party's contemplated inquiries are likely to unduly intrude on privileges or other protections belonging to some other party, the court may within its discretion enter a protective order limiting the scope of such topics, or precluding inquiry as to them altogether.  *See, e.g.*, *SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y.1992) (entering order precluding

corporate representative testimony on topics that in the court's view "constitute[d] an impermissible attempt by defendant to inquire into the mental processes and strategies of the [party subject to 30(b)(6) notice]").  Similarly, pursuant to Rule 45(c)(3)(A)(iii) and (iv) of the Federal Rules of Civil Procedure, "[o]n timely motion, the issuing court must quash or modify a subpoena that (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

### B.      Attorney-Client Privilege and Work Product Doctrine

Generally, information protected by the attorney-client privilege or the work product doctrine is not discoverable.  Fed. R. Civ. P. 26(b)(1).  Privileges further the administration of justice and should not be set aside lightly.  *McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991).  But because privileges also serve to withhold relevant information from the finder of fact, they must also be narrowly construed.  *See Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 225 (D.D.C. 1995).  In this case, because the court's subject matter jurisdiction is based on diversity, Colorado substantive law regarding the attorney-client privilege governs. *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990) ("In a civil action based upon a state cause of action, state law controls the determination of privileges.").  By contrast, "the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed .R. Civ. P. 26(b)(3)."  *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (citation and quotation omitted).

Colorado has codified the attorney-client privilege in pertinent part as follows:

 "An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment ..."

Colo.Rev.Stat. § 13–90–107(b).  The law is clear that the attorney-client privilege inures to the benefit and protection of the client, to allow a client to gain counsel, advice or direction with respect to the client's rights and obligations confidentially.  *See Mountain States Tel. & Tel. Co. v. DiFede ("DiFede")*, 780 P.2d 533, 541 (Colo. 1989).  The work product doctrine is reflected in Fed. R. Civ. P. 26(b)(3)(A), which generally protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for a party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).

Neither of these privileges is absolute; both the attorney-client privilege and the work product doctrine may be waived.  A waiver may be express, *i.e.*, a party may affirmatively consent to disclosure of the information.  *See, e.g.*, *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) ("The work-product privilege may be waived by the voluntary release of materials otherwise protected by it.") (citation and quotation omitted).  Waiver may also be implied through conduct. The burden of proving waiver rests upon the party seeking to overcome the privilege. *DiFede*, 780 P.2d at 542; *accord. H. ex rel. Holder v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 655 (N.D. Okla. 2005) ("[T]he majority view is that the party claiming waiver has the burden of proof on that issue.").

As to attorney-client privilege, the Colorado Supreme Court found that an implied waiver of privilege is appropriate in the following instance:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the

11

asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*DiFede*, 780 P.2d at 543–44. In addition, the Federal Rules provide that work product may be discovered if it is otherwise discoverable under Rule 26(b)(1) and the party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

## II.     Norton Motion to Quash

The court first considers the Motion to Quash filed by the Turners' counsel, Tiffaney Norton.  In *Boughton v. Cotter Corp.*, the Tenth Circuit held that a district court may properly exercise its broad discretion to limit discovery under Fed. R. Civ. P. 26(b)(2)(C) by requiring a party seeking to depose opposing counsel to show all of the following as to the potential testimony sought to be elicited:  "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."  65 F.3d 823, 829 (10th. 1995) (citing the rule originally set forth by the Eight Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), and widely subsequently applied by district court in other circuits).

American Family contends that it should not be required to set forth such a showing, because Ms. Norton is not trial counsel for any party still a party to this action. [#227 at 14].  Although some courts have held that the *Shelton* standards apply only to trial counsel, it is clear that the circumstances of this case continue to present significant issues with respect to privilege and waiver for Ms. Norton and the Turners.  Therefore, this court—like many others within and outside this circuit—finds that consideration of

the *Shelton* factors is appropriate.   *See, e.g.*, *Malcolm D. Smithson and Christine B. Smithson Trusts v. Amerada Hess Corp.*, No. CIV 06-624 JB, 2007 WL 5685112 at *9 (D.N.M. Dec. 19, 2007) (construing *Boughton* to stand for the proposition that even if the *Shelton* criteria need not be strictly applied to counsel "who are not trial counsel in the current litigation," they nevertheless remain "useful factors" for a district court "to consider when deciding a motion for protective order" as to counsel for adverse party); *see also Townsend v. Imperial County*, No. 12–cv–2739–WQH (PCL), 2014 WL 2090689 at *2 (S.D. Cal. May 19, 2014) (applying *Shelton* to counsel not responsible for trial in the case at bar).

In considering the *Shelton* factors, the court concludes that American Family has established that certain communications, namely Ms. Norton's communications with Plaintiffs, Granite State, and National Union regarding the Underlying Lawsuit are relevant, may not be subject to adequate discovery from any other source, are likely non-privileged, and are potentially crucial to American Family's affirmative defense that the *Nunn-Bashor* agreement assigning the Turners' claims to Plaintiffs was the product of fraud or collusion.[3]

Ms. Norton's communications with Plaintiffs and other third-parties concerning the Underlying Lawsuit may provide a unique source of information as to whether there is a foundation for American Family's assertion of this affirmative defense.   For instance, Ms. Norton was in email communication with Plaintiffs' counsel and counsel

---

[3] The Colorado Court of Appeals has recognized, in cases such as the instant one where "the parties did not stipulate to a damages award, but instead agreed that the damages be determined by an arbitration judge," that in "challenging the reasonableness of the damages award, [a party such as American Family] may also raise the affirmative defense of collusion or fraud."   *DC-10 Entertainment, LLC v. Manor Insurance Agency, Inc.*, 308 P.3d 1223, 1227 (Colo. App. 2013).

for Granite State and National Union about the execution of the *Nunn-Bashor* agreement. [#216-3; #148-9]. Ms. Norton could certainly not have an attorney-client relationship that extended to Plaintiffs or their counsel, as the Turners were directly adverse to Plaintiffs prior to execution of the agreement.

Nor could Ms. Norton have a common interest privilege with counsel for Granite State or National Union for the time period before the *Nunn-Bashor* agreement was executed in November 2012. As American Family argued, Colorado law provides that "an attorney retained by the insurance carrier owes a duty to the insured only; there is no attorney-client relationship between an insurance carrier and the attorney it hires to represent the insured." *EMC Ins. Co. v. Mid-Continent Cas. Co.*, No. 10-CV-03005-LTB-KLM, 2012 WL 4668453, at *3 (D. Colo. Oct. 3, 2012). Nor does a common interest prior to the execution of the *Nunn-Bashor* agreement arise on another basis. Under applicable federal law as to work product and Colorado law as to the attorney-client privilege, no sufficiently similar common legal interest was shared between the Turners and Granite State or National Union at any point prior to execution of the *Nunn-Bashor* agreement in November of 2012. Courts within this circuit have held that Colorado recognizes the common interest doctrine only as to "'communications made between co-defendants and the attorney who represents them both, for the sake of discussing their common interests in a joint defense in civil or criminal litigation.'" *Garcia v. Berkshire Life Ins. Co. of America*, No. 04–cv–01619–LTB–BNB, 2007 WL 3407376, at *8 (D. Colo. Nov. 13, 2007) (quoting *Gordon v. Boyles*, 9 P.3d 1106, 1124 (Colo. 2000)). As to the scope of the federal common interest doctrine, the Tenth Circuit has held that the doctrine applies only when "the nature of the interest" at issue

is "identical, not similar." *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695 at 705.  Because the Turners did not share an attorney in common during the Underlying Litigation with Plaintiffs, Granite State, or National Union, and in fact had interests adverse to the Plaintiffs then suing them in the Underlying Litigation and to any insurance company denying them indemnity for same, the court finds that Ms. Norton's communications regarding the Underlying Lawsuit with Plaintiffs and the insurance carriers  waived any potentially applicable attorney-client privilege or work product doctrine protection as to the underlying substance of the communications.

For reasons similar to those set forth above, other courts confronted with analogous fact patterns have permitted insurance companies to depose counsel as to communications and underlying facts relevant to entry of default and assignment of rights*. American Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582 (S.D. Cal. 1995) ("*Krieger*").  The court finds that the deposition of Ms. Norton should proceed, but should (as in *Krieger*) be limited to 3 hours over the course of a single day prior to August 17, 2015.  The court also orders that inquiry should be limited to Ms. Norton's **communications with Plaintiffs, Granite State (including counsel and representatives), and National Union (including counsel and representatives) or other third-parties** concerning three areas: (1) the Underlying Litigation, (2) the entry of default and resulting arbitral award of damages, and (3) the Turners' entry into the *Nunn-Bashor* agreement in the Underlying Litigation.[4]

---

[4] The court also finds—at least on the record and briefing before it—that the *Bashor-Nunn* agreement alone has not placed any work product or attorney-client communication at issue in the instant litigation. In addition, because the court is permitting American Family to pursue third-party discovery about the circumstances surrounding the execution of the agreement (subject to any valid objection of counsel at

As to any other potential areas of inquiry addressed by American Family's response to Ms. Norton's Motion to Quash [#227], the court finds that American Family has failed to make the showing of relevance, lack of availability from other sources, likely absence of privilege, and/or need necessary in the circumstances of this case to find that such questioning of Ms. Norton should be permitted to go forward.

### III.   Rule 30(b)(6) Depositions Motion to Quash

Granite State and National Union devote much of their briefing in their Motion to Quash and For Protective Order as to American Family's Notices of Rule 30(b)(6) (and the subsequent Reply in support thereof) to the arguments that American Family should not be permitted to pursue discovery bearing on its fraud/collusion affirmative defense because American Family has not yet (according to Granite State and National Union) obtained specific evidence in support thereof, and because in any event, the lack of reasonableness of the arbitral award could be proven even absent fraud or collusion. [#218 at 9-10].  The court respectfully disagrees.

As an initial matter, the circumstances surrounding the resolution of the Underlying Lawsuit are unusual enough, for the purposes of discovery, to permit American Family to pursue information in support of its defense of fraud/collusion. Discovery to date has revealed that Ms. Norton was retained only for the purposes of settling the matter, not to provide a defense to the Turners.  [#216 at 8]. Then, during a hearing in the Underlying Lawsuit, Ms. Norton states "There was an agreement as to how this judgment would be obtained against American Family…"  [#227-9 at 6:25-7:1]. The Turners did not file an Answer but rather permitted a default judgment to be entered

---

deposition), it is unlikely that American Family could establish that privileged information is "vital" to its defense, a required element to find implied waiver under *DiFede*.

against them.  While American Family may ultimately fail in its affirmative defense of fraud/collusion, the court is unwilling to prejudge the issue and prevent American Family from taking discovery on it.

Moreover, the fact that some of the topics propounded by American Family were relevant to American Family's dismissed claims of bad faith against Granite State and National Union does not undercut their relevance to a defense of fraud/collusion.  For example, information about the claim handling may lead to admissible evidence with respect to whether the settlement was consistent with prior claims handling, and therefore not a product of collusion or fraud.  Similarly, non-privileged information about the settlement process may lead to admissible evidence regarding any promises made by Granite State and National Union to both Plaintiffs and the Turners to induce them to increase their settlement demand, or agree not to challenge such demand.

As parties are generally entitled to discovery of relevant, non-privileged subject matter bearing on any claim or defense remaining at issue in the litigation, the court does not find the arguments by Granite State and National Union addressed above to be persuasive.  Moreover, Granite State and National Union fail to make any non-conclusory showing that any burden accompanying production of a 30(b)(6) representative to speak to topics potentially relevant to American Family's fraud/collusion affirmative defense would outweigh the value of the discovery sought by such testimonial inquiry.

On the other hand, American Family's only efforts to establish the relevance of the bulk of the noticed topics (topics that lack facial relevance to the issues remaining in this litigation) appear to be based on its previously dismissed third-party claims.  To the

extent American Family believes it may be able to restyle these claims as theories of apportionment of fault pursuant to Colorado's "Non-Party at Fault" statutory provisions, the court notes American Family has not yet sought leave to make any such designation out of time. The court will not order Granite State or National Union to provide any further discovery pertaining to American Family's previously dismissed bad faith claims, or any other claim or defense that is not presently in this case.

Therefore, the court orders Granite State and National Union to designate (without waiver of any previously asserted objection, including attorney-client privilege or other applicable privilege) a corporate representative(s) to testify **only** as to Topics 3, 4, 5, 8, and 13 as set out in the Amended Rule 30(b)(6) Notices to Granite State and National Union. [#218-4 & 5].[5] As a general matter, Granite State and National Union's arguments that these topics lack reasonable particularity and/or relevance, to the extent they present any, fail to persuade the court.[6] Nor is the court persuaded that the information provided at a 30(b)(6) deposition concerning such topics would be unduly cumulative of discovery already provided in this action, particularly given that it is

---

[5] To the extent those topics implicate settlement communications, the court notes that "[a]bsent direction from the Tenth Circuit, this court will not imply the existence of a federal settlement privilege under either Fed. R. Evid. 408 or under Fed. R. Evid. 501." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164–MLB–DWB, 2007 WL 1246216, at *4 (D. Kan. Apr. 27, 2007). Moreover, absent similar direction from the Tenth Circuit, the Colorado Supreme Court, or the Colorado Court of Appeals, this court will not imply the existence of such a privilege under state law. As to Colorado's "mediation privilege," the court notes that privilege appears limited to communications "made in the presence or at the behest of the mediator." *Yaekle v. Andrews*, 195 P.3d 1101, 1109 (Colo. App. 2008).

[6] The court does note, however, to the extent that these topics invoke the term "all," Rule 30(b)(6) depositions are not intended to be memory tests in which a deponent is asked to recall every single detail related to a particular topic. If there are relevant documents, the court expects that American Family will show such documents to the deponent.

unclear whether any previous witness testified that he or she lacked personal knowledge about a particular topic.

With respect to the other noticed topics [#218-4 & 5], the court finds they are (when not principally directed to previously dismissed claims) unduly cumulative of topics 3, 4, 5, 8, and 13 and/or likely to target information subject to a valid privilege or protection under the circumstances of the case. *See SEC v. Morelli*, 143 F.R.D. 42, 47 (entering order precluding corporate representative testimony on topics that in the court's view "constitute[d] an impermissible attempt by defendant to inquire into the mental processes and strategies of the [party subject to 30(b)(6) notice]").[7]

Therefore, the court orders that each insurance carrier produce a designee or designees for deposition of no more than one day of four (4) hours[8] at a time of mutual convenience prior to August 17, 2015.

## IV.    Gorski Motion to Quash

Granite State and National Union also move to quash the deposition of Mr. Gorski, the initial claims adjuster on the Underlying Litigation. [#224]. Granite State and National Union argue that Mr. Gorski's knowledge pertains to the dismissed claims, that American Family has taken the opportunity to depose all other claims adjusters, and that it would be cumulative of the Rule 30(b)(6) depositions that American Family seeks. [#224, #232]. Upon reflection after the oral argument, the court is not convinced

---

[7] To the extent Topics 3, 4, 5, 8, and 13 potentially implicate information subject to a valid claim of privilege or protection, the court finds that counsel for Granite State and National Union should be able without undue burden to preserve any such privilege or protection by interposing objections at deposition, when proper and well-founded.

[8] Given the shortened duration of these depositions, the court encourages the Parties to discuss whether any previously taken testimony will be designated as binding upon the respective corporations to further streamline the depositions.

that Mr. Gorski lacks knowledge of potentially relevant non-privileged information as to American Family's fraud/collusion defense.   American Family contends, and Granite State and National Union do not dispute, that Mr. Gorski was involved in the evaluation of the claim, the settlement of the claim, instructions to counsel for the Turners, and negotiations regarding the resolution of the claim.   [#229 at 2-3].   While some of those topics may have been covered by other witnesses or encompassed by the Rule 30(b)(6) depositions of Granite State and National Union, the court cannot presume, without evidence and based on attorney argument alone, that the testimony would be unduly duplicative. *See Miller v. Colorado Farms*, No. 97-cv-02015-WFD-OES, 2001 WL 629463, at *4 (D. Colo. 2001) (J. Schlatter).   In addition, the touchstone of discovery is relevance and not admissibility; the fact that Mr. Gorski's testimony may ultimately not be admissible at trial does not preclude American Family from inquiring about the steps Mr. Gorski took to resolve the claim.   Nevertheless, because the court is sympathetic to the fact that Mr. Gorski no longer works for Granite State and/or National Union, counsel is directed to take the deposition, to be limited to four (4) hours, at Mr. Gorski's convenience, even if that results in a deposition scheduled after hours over two days or on a weekend day.   Accordingly, the court denies the Motion to Quash.

## CONCLUSION

Based on the court's review of the papers and supporting evidence, the oral arguments, and application of the pertinent case law, IT IS HEREBY ORDERED that:

(1)   The Motion to Quash and for Protective Order [#216] filed by Tiffany Norton is GRANTED IN PART and DENIED IN PART;

(2)    The court DIRECTS Tiffaney Norton to sit for deposition of no more than three hours over the course of a single day at a time of mutual convenience prior to **August 17, 2015**, limited as set forth above to Ms. Norton's communications with third-parties concerning the Underlying Litigation, and to any facts pertaining to the entry of default, the arbitral award of damages, and the Turners' entry into the *Nunn-Bashor* agreement in the Underlying Litigation;

(3)    Dismissed Parties Granite State and National Union's Motion to Quash and for Protective Order as to Rule 30(b)(6) Notices [#218] is GRANTED IN PART and DENIED IN PART;

(4)    Granite State and National Union each shall designate one or more corporate representatives to testify to Topics 3, 4, 5, 8 , and 13 in the underlying 30(b)(6) notices, as set forth above, for a deposition limited to four (4) hours, at a time of mutual convenience to the parties prior to **August 17, 2015**;

(5)    Dismissed Parties Granite State and National Union's Amended Motion to Quash and for Protective Order Re Gorski Deposition [#224] is DENIED;

(6)    The court directs that the deposition of Mr. Gorski, limited to four (4) hours, proceed at a time(s) of mutual convenience to the Parties and Mr. Gorski prior to **August 17, 2015;**

(7)    Defendant American Family Mutual Insurance Company's Unopposed Motion to Reset the Pre-Trial Conference and to Extend the Time to Take

Depositions [#235] is GRANTED, solely to complete the depositions contemplated herein no later than **August 17, 2015**;

(8)    The Pre-Trial Conference currently set for July 28, 2015 at 1:30 is VACATED and RESET to **September 8, 2015 at 3:30 p.m.**; and

(9)    No further extensions of the schedule in this case will be entertained except in exceptional circumstances.

DATED: July 15, 2015                      BY THE COURT:

                                      s/ Nina Y. Wang
                                      United States Magistrate Judge