**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-02813-CMA-NYW

WELDESAMUEL GEBREMEDHIN, an individual,
TERHAS DESTA, an individual,
ABRHAM GIDAY, a minor, by and through his guardians and natural parents,
WELDESAMUEL GEBREMEDHIN and TERHAS DESTA,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Defendant.

_____

**ORDER ON AMERICAN FAMILY'S MOTION PURSUANT TO FED. RULE EVID. 702
TO STRIKE THE OPINIONS OF PLAINTIFFS' EXPERT GARTH ALLEN**
_____

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendant American Family Insurance Company's ("Defendant" or "American Family") Motion Pursuant to Fed. Rule Evid. 702 to Strike the Opinions of Plaintiffs' Expert Garth Allen, filed on May 21, 2015 [#198] (the "Motion to Strike"). This Motion was referred to this Magistrate Judge pursuant to the Order Referring Case dated October 21, 2013 [#6], the Reassignment dated February 9, 2015 [#158], and the Memorandum dated May 27, 2015 [#205]. The court has carefully considered the Motion and related briefing, the arguments of the Parties' counsel at the August 18, 2015 oral argument on the Motions, and the applicable case law. For the reasons discussed below and as set forth herein, the court GRANTS IN PART and DENIES IN PART American Family's Motion to Strike.

**BACKGROUND AND RELEVANT PROCEDURAL HISTORY**

This case involves third-party breach-of-contract and bad faith claims arising out of an insurance coverage dispute between Glen and Veronica Turner (the "Turners") and American Family. The Turners were foster parents insured by an American Family homeowner's insurance policy in the spring of 2009 while then infant Plaintiff Abrham Giday suffered severe brain injuries while placed under the Turners' foster care. [#3 at ¶¶ 7-8]. Abrham Giday and his birth parents (also the Plaintiffs in the instant litigation) subsequently filed suit in a Colorado state court against the Turners (the "underlying litigation"). [*Id.* at ¶ 6].

The Turners sought a defense and indemnity from American Family under their homeowner's policy. [*Id.* at ¶ 11]. American Family in turn denied any obligation to provide any coverage in the form of indemnity or a defense, citing (*inter alia*) that the facts as alleged in the underlying litigation triggered intra-insured bodily injury and business pursuits exclusions in the insurance agreement.

Under the operative Scheduling Order, the Parties were required to designate "all experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before January 30, 2015." [#153]. On January 30, 2015, Plaintiffs served the expert report of Garth Allen ("Professor Allen"). [#198-1]. Professor Allen teaches insurances at the College of Business Administration at the University of Northern Colorado. [*Id.* at 1]. According to his report, his "educational background and professional activities," which include "teaching seminars and workshops to insurance professionals, and consultations with insurers as well as insureds," have allowed him to "become familiar with the practices, customs, and procedures relevant to casualty

insurance policies, coverages, and claim practices." [*Id.*].  According to Professor Allen, "[t]here is, of course, substantial overlap between industry standards and the law because the standard is to never act in violation of the law." [*Id.* at 4].  He further states that "references in this report to regulations, statutes, and case law are intended not as statements of what the law is but are instead intended as a description of insurance industry standards that have evolved as a result of legal precedents." [*Id.*].

On May 21, 2015, American Family filed the instant Motion to Strike.  [#198] American Family seeks to strike a wide range of the opinions proffered by Professor Allen, reflected below.  American Family contends that many of Professor Allen's opinions improperly reach the ultimate issues in this case in contravention of Rules 702 and 704 of the Federal Rules of Evidence, improperly interpret the relevant legal standards and the contract, and improperly seek to instruct the factfinder of the relevant legal standards and the contract.  [#198].  American Family further argues that a few of Professor Allen's opinions, including his assertion that in Colorado the prevailing industry practice is to "defend almost all tendered claims due to the extraordinarily broad nature of the defense obligation and the high cost to insurers that improperly fail to defend their insured," should be excluded as lacking an adequate basis.  [*Id.* at 14-16].

In opposition, Plaintiffs contend that courts have concluded that expert testimony in bad faith cases going to ultimate issues of fact (rather than law) and premised on explaining applicable industry custom and practice is not barred by Rule 704, and may be helpful to the jury under Rule 702.  [#217].  Plaintiffs also argue that to the extent a number of Professor Allen's opinions are found to be inadmissible, the same applicable

3

standards and reasoning should bar a number of opinions disclosed by American Family's "bad faith" expert Steven Plitt.[1] [*Id.*].

American Family's Motion to Strike expressly challenges the following specific opinions in Professor Allen's report:[2]

1. My opinion is that American Family's conduct was unreasonable and in violation of multiple widely recognized minimum insurance claim handling standards. [#198-1 at 7].[3]

2. As noted in detail above, American Family's refusal to defend its insureds and settle the claims against them was unreasonable, contrary to industry standards, and therefore in bad faith. [*Id.* at 15].

3. American Family's improper application of the Intra-Insured and Business Pursuits exclusion, failure to recognize the broad duty to defend, failure to participate in mediation or settlement discussions, failure to take advantage of a settlement opportunity within limits, and the overall refusal to provide any defense or protection for the Turners represents intentional and willful conduct that violates the rights and interests of the insureds. [*Id.*].

4. American Family also engaged in a number of prohibited practices in violation of the Colorado Unfair Claim Settlement Practices Act. [*Id.* at 7].

---

[1] Plaintiffs have not filed a motion to strike Mr. Plitt's opinions. As noted by American Family, a party may not include a motion in a response to an original motion. D.C.COLO.LCivR 7.1(d). Accordingly, in considering American Family's Motion to Strike, the court does not consider Mr. Plitt's report, because whether or not Mr. Plitt's opinions comply with Rules 702 and 704 of the Federal Rules of Evidence and the relevant case law is irrelevant to whether Professor Allen's opinions are permissible.

[2] The discrete portions of Professor Allen's expert report challenged by American Family's Motion to Strike are numbered here in the order in which they appear in the Motion to Strike, and are cited to Professor Allen's expert report, attached as Exhibit 1 [#198-1]. For purposes of reference in this order, hereinafter the court cites to the portions of testimony by the numbered paragraphs in this background section (*i.e.*, "Opinions 1-40"). During oral argument, counsel for American Family suggested that it sought to exclude all similar conclusions reflected in the report but that were not specifically identified. Such broader relief was not requested in its Motion to Strike [#198], and this court will therefore focus and rule only on the discrete portions identified in the Motion to Strike.

[3] In resolving the objections to specific expert opinions in this Order, the court refers to each by number assigned in this list. For instance, this first challenged expert opinion is referred to as "Opinion No. 1."

5. Mr. Fleming's unsupported approach of concluding that Giday was a resident because he was at the Turner household and in their care at the time of his alleged injury is simply incorrect, self-serving, in violation of the rights and interests of the Turners, in violation of the broad duty to defend, in violation of the requirement to construe exclusions narrowly, and in violation of basic insurance industry standards. [*Id.* at 10].

6. There was no way American Family could meet its burden of showing that baby Giday was unequivocally the resident of the Turner household at all times material to the claim, a burden that had to be met in order for it to deny a defense and coverage under the Intra-Insured exclusion. [*Id.*].

7. Reliance on the Business Pursuits exclusion, like the reliance on the Intra-Insured exclusion, was improper and contrary to insurance industry standards. [*Id.*].

8. It was unreasonable and contrary to insurance industry standards for American Family to reject, disavow, and thus fail to meet its duty to defend... [*Id.* at 11].

9. American Family acted in violation of its quasi fiduciary duties, acted unreasonably, and breached its duty to defend by wrongfully denying this claim, rejecting its duty to defend and to afford coverage.... [*Id.* at 12-13].

10. Under these circumstances, and without conducting any further investigation from which it could adequately assess its obligations, American Family's failure to settle the claims against the Turners within policy limits despite the opportunity to do so was wrongful. [*Id.* at 13].

11. American Family acted in violation of the CUCSPA by misrepresenting policy provisions. [*Id.* at 14].

12. American Family also acted in violation of subsection III of the CUCSPA by failing to implement reasonable standards for the prompt investigation of claims arising under its insurance policies. [*Id.*].

13. American Family acted unreasonably and contrary to insurance industry standards by failing to timely acknowledge and accept its duty to defend. [*Id.*].

14. American Family also acted in violation of subsection IV of the CUCSPA by refusing to pay claims without conducting a reasonable investigation based upon all available information. [*Id.*].

15. As a practical matter, liability claims against the insured can seldom be denied in full, including a refusal to defend. [*Id.* at 7-8].

16. In this case, if American Family had properly considered the Amended Complaint, it would have noted that the Turner's custody of Giday was temporary. [*Id.* at 8].

17. Giday's relationship with the Turners was clearly temporary from the face of the operative pleading. In fact, it was a relationship that never should have happened. [*Id.* at 9].

18. Additionally, any injury or exacerbation of an injury due to Ms. Turner's failure to follow the physician's Emergency Room directive was clearly after Giday was ordered to be returned to his parents, thus ending any possibility of residency. The face of the Amended Complaint therefore shows that Giday was not a resident of the Turner household at the time of his alleged injury. [*Id.* at 9].

19. At bottom, the allegations of the Amended Complaint gave rise to the possibility that Giday's erroneous five-night stay with the Turners did not make him a resident of their household for the purposes of the policy's Intra-Insured exclusion. [*Id.*].

20. The removal of Giday from his parents' home by DHS was temporary as a matter of law. [*Id.*].

21. There was never a long-term or permanent foster care relationship between Giday and the Turners, nor any intention that he live there as a member of their household. [*Id.*].

22. Not only was it unlikely that Giday was a resident, it was instead a near certainty that he was not a resident of the Turner household. [*Id.* at 9-10].

23. The Amended Complaint, however, contained no allegations from which American Family could ascertain the Turner's motivations for becoming foster parents and therefore no allegations from which it could determine with certainty that they were driven by profit. [*Id.* at 10].

24. I would note that under federal law, payments received by foster parents for a qualified foster care placement agency are not considered income and are not reported on a tax return. [*Id.* at 11].

25. Further, the Turners' alleged liability was based on negligence and negligence/res ispa loquitur, and not on any contractual liability, thus proving the inapplicability of the contractual liability exclusion. [*Id.* at 13].

26. American Family was required, by law and insurance industry standards, to determine if it was possible that Giday was not a resident of the Turner household and provide a defense if that possibility existed. [*Id.* at 9].

27. Insurers can consider extraneous evidence, evidence outside the complaint, but only for an inclusionary purpose (finding coverage) and not for an exclusionary purpose (defeating coverage). [*Id.* at 8].

28. Terms undefined in the policy must be given their ordinary meaning and when the terms are incorporated in an exclusion, they must be construed narrowly so as to favor coverage according to insurance industry standards and Colorado case law. [*Id.*].

29. If American Family questioned the residency status of Giday, it could have explored beyond the Amended Complaint, not in order to deny the claim, but to find clarification in order to provide a defense. [*Id.* at 9].

30. Most importantly, even without any information beyond the operative complaint, American Family was required by law and insurance industry standards, to determine if it was possible that Giday was not a resident of the Turner household and provide a defense if that possibility existed. [*Id.*].

31. Typically, the insurer either must, or out of an abundance of caution should, elect to defend a claim so that more information can be accumulated during the litigation process, information that can then be used to make an informed decision regarding indemnity, including settlement of the claim. [*Id.* at 7].

32. Further, considering evidence outside the complaint, evidence that can and should be considered in order to affirm the duty to defend, there was clearly not a profit motive and thus no business pursuit." [*Id.* at 11].

33. Additionally, even if the American Family policy is in excess over any coverage purchased by SKSF, it still contains a duty to defend that is not cancelled or voided by other insurance. The duty to defend is a joint and several duty, *D.R. Horton, et al v. Mountain States Mutual Casualty Company*, U.S. Dist. Ct. for the Dist of Co., 2014 U.S. Dist. LEXIS 132563, and the fact that one insurer may be defending does not erase or cancel another insurer's duty to defend if such a duty is included in the insurance policy as it is here. [*Id.* at 12].

34. If the allegation of employment alone satisfied the Business Pursuits exclusion, the additional language requiring that the employment be "profit motivated" would be rendered meaningless in contravention of Colorado

35. Both overlooked the critical issue if Giday's residency at the time of the denial and during their deposition testimonies. [*Id.* at 8].

36. Colorado courts have held that the determination of whether a person is a resident of a named insured's household is a fact specific inquiry. [*Id.*].

37. First, the policy's definition of "business" is directly linked to the insured's intent/motivations. [*Id.* at 10].

38. In Colorado, the standard and custom in the insurance industry is to defend almost all tendered claims due to the extraordinary broad nature of the defense obligation and the high cost to the insurers that improperly fail to defend their insured. [*Id.* at 7].

39. Regardless, it should have been reasonably apparent to American Family that providing foster care to children is much more likely to be a humanitarian activity than it is to be profit- motivated for purposes of the exclusion. [*Id.* at 10].

40. If American Family had asked Ms. Turner why she was providing foster care she would have told them, consistent with her application to become a foster parent, that she and her husband were "unable to have more children," and "their desire was to help out young children." [*Id.*].

**ANALYSIS**

**I.    Standard of Review**

As the Supreme Court held in *Daubert*, a trial court is obliged to act as "gatekeeper" of proffered expert testimony for relevance and reliability pursuant to Rules 401 and 702 of the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–95 (1993). *Daubert*'s "gatekeeping" requirement applies not only to expert testimony based on scientific knowledge and principles, but also to all other expert testimony premised on "technical" or "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quotation omitted). On proper challenge, it is the proponent's burden to establish the

8

admissibility of the proffered expert testimony at issue. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

When Rule 702 is read in conjunction with Rule 704, expert testimony is not proper "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988). Thus, "[w]hile testimony on ultimate facts is authorized under Rule 704 ... testimony on ultimate questions of law is not favored." *Id.* at 808. Therefore, "[t]he expert can refer to the law in expressing his opinion, but he may not tell the jury what legal standards must guide their verdict." *MCC Mgmt of Naples, Inc. v. Int'l Bancshares Corp.*, 468 Fed. App'x. 816, 821 (10th Cir. 2012) (emphasis in original); *see also United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005) ("[A]n expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." (citation omitted)). In addition, an expert may not ordinarily "state legal conclusions drawn by applying the law to the facts," as such testimony is typically not helpful to the finder of fact. *A.E. By & Through Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991); *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.").

Even when the court is satisfied that the expert opinion is not an impermissible legal opinion or conclusion, Rule 702 also requires that any proffered expert testimony be "help[ful] [to] the trier of fact to understand the evidence or to determine a fact in

issue." Fed. Rule Evid. 702(a).  In the context of insurance coverage dispute actions, the Tenth Circuit has repeatedly recognized that trial courts have the discretion to exclude expert testimony regarding the "industry standard," absent an adequate showing of helpfulness to the factfinder.  *North American Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th Cir. 2009) (because a properly instructed jury is generally capable of determining issues involved in cases "alleging bad faith denial and investigation of insurance claims," expert testimony seeking to "compare[] the insurance company's actions to the industry standard" may be properly excluded on the ground that it would not "assist the trier of fact") (citing *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (holding same)).

## II.     Application to Defendant's Motion to Strike

In urging the court to deny Defendant's Motion to Strike, Plaintiffs note that expert testimony in a bad faith action as to relevant industry custom and practice is not *per se* barred by Rules 702 and 704, and in a number of cases, both within and outside this jurisdiction, has been held to be admissible.  [#217 at 3-7].  Plaintiffs further contend that Professor Allen's opinions are ones related to the ultimate issue of fact, because he "does not simply instruct the jury what result to reach.  Instead he analyses [sic] the particular facts in light of his knowledge of industry standards and offers opinions." [#217 at 6].

Having reviewed Professor Allen's report, the court respectfully disagrees.  In some places, Professor Allen's opinions can only be described as pronouncements of law.  For example, Opinion No. 24 states "I would note that under federal law, payments received by foster parents for a qualified foster care placement agency are not

10

considered income and are not reported on a tax return." In another example, Opinion No. 28 states "[t]erms undefined in the policy must be given their ordinary meaning and when the terms are incorporated into an exclusion, they must be construed narrowly so as to favor coverage according to insurance industry standards and Colorado case law." [*Id.* at 8]. Professor Allen himself acknowledges that there is "substantial overlap between industry standards and the law because the standard is to never act in violation of the law." [*Id.* at 4]. To the extent such overlap exists, it is the province of the trial court to instruct the jury as to issues of law. As the *Specht* court recognized, "our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury." *Specht*, 853 F.2d at 808.

In addition, many of Professor Allen's challenged opinions are simply directions to the jury on how to rule that do not even refer to, let alone explain, industry standards. For instance, Opinion No. 20 states "[T]he removal of Giday from his parents' home by DHS was temporary as a matter of law." [#198-1 at 9]. That statement does not articulate an industry standard. Rather, it is a statement directing the factfinder to a specific legal conclusion. Similarly, Opinion No. 32 declares "[f]urther, considering evidence outside the complaint, evidence that can and should be considered in order to affirm the duty to defend, there was clearly not a profit motive and thus no business pursuit." [*Id.* at 11]. Professor Allen is clearly directing the jury to conclude that the business pursuit exception should not legally apply.

Moreover, there are two opinions offered by Professor Allen that do not appear based on his expertise, and are therefore, improper and unduly prejudicial. Opinion 39, which states that foster care is "much more likely to be a humanitarian" rather than

11

profit-driven activity, and Opinion 40, which states that Ms. Turner would have informed American Family that she wished to help out young children through such care if American Family had inquired as to her motivations, raise a different issue.  The court is unable to discern how his experience with the insurance industry as articulated in his report could provide any basis for either opinion, or how Ms. Turner's motivation is at all probative of American Family's contractual obligations and/or bad faith.  Accordingly, the court finds that Professor Allen cannot testify to challenged Opinions 39-40.

Finally, I find that the majority of the challenged testimony, even assuming that the proffered opinions are considered to go to ultimate issues of fact rather than law, is not helpful to a properly instructed jury.  *See, e.g.*, Expert Opinion No. 27 [#198-1 at 8] (opining that "[i]nsurers can consider extraneous evidence, evidence outside the complaint, but only for an inclusionary purpose (finding coverage) and not for an exclusionary purpose (defeating coverage)") & Expert Opinion No. 25 (opining that because "the Turners['] alleged liability was based on negligence and negligence/res ispa loquitur, and not on any contractual liability," the relevant policy's contractual liability exclusion was not applicable).  Plaintiffs bear the burden of establishing the admissibility of Professor Allen's opinions, including showing that it would be helpful to the finder of fact.  *Nacchio*, 555 F.3d at 1241.

In applying these standards, the court finds that Plaintiffs have failed to meet their burden of demonstrating the admissibility and/or the helpfulness of Expert Opinion Nos. 1-6, 9-12, 14, 16-18, 20-25, 27-28, 32-34, 36-37, and 39-40.  These challenged opinions are stricken from Professor Allen's Report.

Expert Opinions 7, 8, 13, 15, 19, 26, 29-31, 35, and 38 appear based on industry customs and practices that Professor Allen has become acquainted with by virtue of his relevant experience as an insurance educator and consultant, except with respect to Opinion Nos. 26, 30, and 38, any reference to "the law" or in the case of No. 38, to "the extraordinary broad nature of the defense obligation," must be stricken. In addition, to the extent that at trial, Plaintiffs fail to establish that these opinions are based on an industry standard voluntarily observed by the industry separate from controlling law, American Family may renew its objection to such opinions for the trial court to then determine whether such opinions are admissible. *See Turner v. State Farm,* Civil Action No. 13-cv-01843-MSK-NYW, 2015 WL 3526995, *4 (D. Colo. June 4, 2015).

## CONCLUSION

Based on the court's review of the papers and supporting evidence, the oral arguments, and application of the pertinent case law, IT IS HEREBY ORDERED that:

(1) The Motion to Strike [#198] Professor Allen's expert report is GRANTED IN PART and DENIED IN PART;

(2) Opinions 1-6, 9-12, 14, 16-18, 20-25, 27-28, 32-34, 36-37, and 39-40 are stricken, and Professor Allen is precluded from testifying as to these Opinions;

(3) The Motion to Strike is DENIED as to challenged Opinions 7, 8, 13, 15, 19, 26, 29-31, 35, and 38, except with respect to Opinion Nos. 26, 30, and 38, any reference to "the law," or "the extraordinary broad nature of the defense obligation," must be stricken; and

(4) American Family may renew its objections to Opinions 7, 8, 13, 15, 19, 26, 29-31, 35, and 38, if the proffer at trial reveals that such "industry standards" are simply restatements of controlling law, rather than standards voluntarily observed by the industry separate from controlling law.

DATED August 21, 2015.                        BY THE COURT:


/*s/* Nina Y. Wang
United States Magistrate Judge