**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02813-CMA-BNB

WELDESAMUEL GEBREMEDHIN, an individual,
TERHAS DESTA, an individual,
ABRHAM GIDAY, a minor, by and through his guardians and natural parents, Weldesamuel Gebremedhin and Terhas Desta,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. # 171) and Plaintiffs' Cross-Motion for Partial Summary Judgment (Doc. # 188). Because Defendant has failed to demonstrate that the factual allegations in the underlying complaint fall squarely within the exclusions of the insurance policy at issue in this case, Defendant had a duty to defend its insureds in the underlying litigation.

## I. BACKGROUND

This suit arises from Defendant's refusal to defend and indemnify its insureds Veronica and Glenn Turner (the "Turners") against claims filed by Plaintiffs in a state court case styled *Weldesamuel Giday Gebremedhin, et al. v. Veronica L. Turner and*

*Glenn Turner*, District Court for El Paso County, Colorado, Case No. 2011CV2500 (the "Underlying Lawsuit"). (Doc. # 3 at 2.)

Plaintiffs filed the Underlying Lawsuit after their child, Abrham Giday, sustained injuries while in foster care with the Turners. (*Id.*) Plaintiffs asserted claims against the Turners for negligence and *res ipsa loquiter* and also asserted claims against Special Kids Special Families, Inc. (SKSF), a non-profit corporation, which allegedly trained, employed, and certified the Turners as foster parents. (*Id.* at 3.)

At the time of the acts alleged in the Underlying Lawsuit, the Turners were named insureds under a homeowners policy issued by Defendant with personal liability limits of $500,000. Under a heading entitled "LIABILITY COVERAGES – SECTION II, COVERAGE D – PERSONAL LIABILITY COVERAGE," the policy relevantly provides:

> **We** will pay, up to our limit, compensatory damages for which any **insured** is legally liable because of **bodily injury** or **property damage** caused by an **occurrence** covered by this policy.
>
> **Defense Provision.**
> If a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this policy applies, **we** will provide a defense at **our** expense by counsel of **our** choice. **We** will defend any suit or settle any claim for damages payable under this policy as **we** think proper.

(Doc. # 171-1 at 21) (emphasis in original[1]). Under a heading entitled "EXCLUSIONS – SECTION II," the policy notes that personal liability coverage does not apply to:

> 4. **Business**. **We** will not cover **bodily injury** or **property damage** arising out of **business** pursuits or the rental or holding for rental of any part of any premises except

---

[1] As is common in insurance contracts, bold type indicates the policy defines the word.

> a. activities which are normally considered non-**business**[.]

(*Id*. at 23) (emphasis in original).  In its definition section, the policy defines the word "business":

> 2. **Business** means any profit motivated full or part-time employment, trade, profession or occupation and including the use of any part of any premises for such purposes.  The providing of home day care services to other than **insureds**, for which an insured receives monetary or other compensation for such services is also a **business**.

(*Id*. at 13) (emphasis in original).

In addition to this so-called "business pursuits" exclusion, the policy further notes Defendant will not pay compensatory damages arising from legal liability where the injured party bringing suit is an insured:

> 11. **Intra-insured Suits**. **We** will not cover **bodily injury** to any **insured**.

(*Id*. at 23) (emphasis in original).  In its definition section, the policy defines the word "insured":

> 4. **Insured**
> 
> a. **Insured** means **you** and, if residents of **your** household:
> (1) **your** relatives; and
> (2) any other person under the age of 21 in **your** care or in the care of **your** resident relatives.

(*Id*. at 13) (emphasis in original).

After Plaintiffs filed the Underlying Lawsuit, the Turners tendered the complaint to Defendant, seeking defense and indemnification pursuant to the homeowners policy.

(Doc. # 3 at 3.) In July of 2012, the parties in the Underlying Lawsuit participated in mediation. (*Id*.) Defendant was invited, but refused to attend. (*Id*.) Shortly after the mediation, Plaintiffs settled with SKSF and its insurers. (*Id*.) Thereafter, SKSF's insurers retained counsel to represent the Turners. (Doc. # 171 at 2.) After allowing default to enter, neither the Turners nor their attorney appeared at an arbitration hearing regarding damages, wherein damages in the amount of $14,533,606 were determined. (*Id*.)

Pursuant to *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010), the Turners entered into an agreement (the "Nunn Agreement") assigning all of the rights, title, and interest they had in claims against Defendant to Plaintiffs. (Doc. # 171 at 3.) In exchange, Plaintiffs agreed not to execute the judgment against the Turners. (*Id*.)

Plaintiffs then filed the instant suit, asserting claims for breach of contract and bad faith breach of an insurance contract for Defendant's failure to defend and indemnify the Turners in the Underlying Lawsuit. On March 23, 2015, Defendant filed a motion for summary judgment on both of Plaintiffs' claims. (Doc. # 171.) On April 23, 2015, Plaintiffs filed their response and a cross-motion for partial summary judgment "on the question of [Defendant's] duty to defend" in the Underlying Lawsuit. (Doc. ## 188, 189.) On May 28, 2015, Defendant filed its combined reply in support of its motion for summary judgment and response to Plaintiffs' cross-motion for partial summary judgment. (Doc. # 206) Plaintiffs thereafter filed a reply. (Doc. # 226.)

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may

not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Where, as here, the parties file cross-motions for summary judgment, each motion is considered separately and "the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). However, when faced with cross summary judgment motions, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties." *James Barlow Family Ltd. P'ship v. David Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

### III. ANALYSIS

Plaintiffs' claims for breach of contract and bad faith breach of an insurance contract turn on the question of whether Defendant had any duty to defend or indemnify in the Underlying Lawsuit. If Defendant had no duty to defend or indemnify the Turners in the Underlying Lawsuit, then its refusal to do so, as a matter of law, cannot constitute breach. In its motion for summary judgment, Defendant argues that the exclusionary terms of the homeowners policy detailed *supra*, specifically the so-called "business pursuits" and "intra-insured" exclusions, obviated any duties to defend or indemnify the Turners in the Underlying Lawsuit. Plaintiffs argue in response and in support of their cross-motion for summary judgment that the policy exclusions did not apply.

To resolve these dueling motions for summary judgment, this Court must now interpret the language of the insurance contract and apply the legal standards that undergird an insurer's duties to defend and indemnify its insureds. For the reasons discussed below, this Court concludes that Defendant had a duty to defend the Turners in the Underlying Lawsuit.

### A. COLORADO'S COMPLAINT RULE

Under Colorado law,[2] the construction of an insurance contract is a matter of law to be determined by the court. *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 956 (10th Cir. 2011) (citing *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999)). Whether the insurer has a duty to defend the insured in a lawsuit is also a question of law. *Carl's Italian Rest. v. Truck Ins. Exch.,* 183 P.3d 636, 639 (Colo. App. 2007).

In Colorado, an insurer's duty to indemnify is distinct from its duty to defend. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086 n.5 (Colo. 1991). "The duty to defend concerns an insurance company's duty to affirmatively defend its insured against pending claims." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003) (quotation omitted). In contrast, the:

> [D]uty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured. Because the duty to defend encompasses any potential claims raised by the facts and the duty

---

[2] A federal court, sitting in diversity, must apply the substantive law of the forum state. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). Because Colorado has the most significant relationship to the insurance policy, *see Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998), the Court applies Colorado law.

> to indemnify relates to the actual liability imposed, [the Colorado Supreme Court] has considered the duty to defend to be a broader concept than the duty to indemnify.

*Id*.; *see also Constitution Assocs. v. N.H. Ins. Co.,* 930 P.2d 556, 563 (Colo. 1996) ("The duty to defend is triggered more easily than is the duty to indemnify," and "[w]here there is no duty to defend, it follows that there can be no duty to indemnify. However, where there is a duty to defend, there is not necessarily a duty to indemnify.").

In order to determine whether an insurer owes a duty to defend, Colorado courts apply the so-called "Complaint Rule." *United Fire*, 633 F.3d at 957; *Hecla*, 811 P.2d at 1089. The application of the "Complaint Rule" involves a two-step inquiry. First, a court must consider "whether the factual allegations in the underlying complaint[3] trigger coverage under an insurance policy's terms." *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004). The insurer's duty to defend arises where a complaint against its insured "alleges any facts that might fall within the coverage of the policy," even if allegations only "potentially or arguably" fall within the policy's coverage. *Id.* (citing *Hecla*, 811 P.2d at 1089).

Once the insurer's duty to defend has been triggered by factual allegations implicating coverage under the policy, an insurer at this second stage of inquiry may avoid the duty to defend by showing that exclusions in the policy preclude coverage. *Thompson*, 84 P.3d at 502. The duty to defend will survive unless the insurer can establish that the allegations in the complaint are solely and entirely within the

---

[3] In recognition of the factual complexity of this dispute and unique posture of the parties, and in the interest of clarity, this Court notes that the "underlying complaint" examined herein is the complaint filed against the Turners and SKSF in the Underlying Lawsuit, not the complaint against Defendant that initiated this suit.

exclusions of the policy. *Hecla*, 811 P.2d at 1090. "An insurer is not excused from its duty to defend **unless there is no factual or legal basis** on which the insurer might eventually be held liable to indemnify the insured." *Id*. (emphasis added).

The Colorado Supreme Court has stated that "the duty to defend is designed to cast a broad net in favor of coverage and that it must be construed liberally with a view toward affording the greatest possible protection to the insured." *Thompson*, 84 P.3d at 502 (internal quotations omitted). Accordingly, "[a]n insurer seeking to avoid its duty to defend an insured bears a heavy burden." *Hecla*, 811 P.2d at 1089. This heavy burden "comports with the insured's legitimate expectation of a defense," *Id.*, and reflects an evidently powerful policy preference that insurers err on the side of defense. [4]

### B. WHETHER DEFENDANT ESTABLISHED THAT THE UNDERLYING ALLEGATIONS FALL WITHIN THE EXCLUSIONS OF THE POLICY

Applying the "Complaint Rule" and the attendant legal standards to the undisputed facts of this case, the Court finds Defendant failed to demonstrate that it had no duty to defend the Turners in the Underlying Lawsuit.

At the first step of the inquiry, the factual allegations in the underlying complaint are clearly sufficient to implicate coverage under the homeowners policy and thereby trigger Defendant's duty to defend. The underlying complaint alleges that the Turners committed, or through negligent inaction permitted, a number of acts that severely

---

[4] The Colorado Supreme Court goes so far as to note in dicta that "[t]he appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated." *Hecla*, 811 P.2d at 1089.

injured a foster child in their care. (Doc. # 171-1 at 3-5). The allegations in the underlying complaint put the Defendant on notice of a claim that was "potentially or arguably" within the personal injury coverage of the policy, thereby triggering the duty to defend. See *Hecla*, 811 P.2d at 1089.

At the second stage of the inquiry, Defendant can evade the duty to defend only on a showing that the factual allegations in the underlying complaint fall squarely within the exclusions of the policy and will not be excused if there are **any** factual or legal bases on which it might eventually be held liable to indemnify. (*Id*.) Defendant relies on the aforementioned "business pursuits" and "intra-insured" exclusions in an effort to discharge its duty to defend. (Doc. # 171 at 7-16.) This Court will address each exclusion in turn, and ultimately conclude Defendant failed to meet its extraordinary burden of demonstrating that there are no factual or legal bases under which it might have eventually been liable to indemnify the Turners.

   *a) Business Pursuits Exclusion*

The policy's "business pursuits" exclusion precludes coverage for any "bodily injury or property damage arising out of business pursuits" and the policy defines "business" as any "profit motivated full or part-time employment, trade, profession or occupation . . . ." (Doc. # 171-1 at 13, 21.)

When evaluating similar "business pursuit" exclusions, Colorado courts engage in a two-part inquiry, assessing (1) the continuity or regularity of the activity, and (2) whether there is a profit motive. *Nat'l Farmers Union Prop. & Cas. Co. v. Garfinkel*, 277 P.3d 905, 910 (Colo. App. 2012). When an activity evinces both "continuity" and "profit

motive," it is a business pursuit within the meaning of the exclusion.  *Id*.  With respect to "profit motive," "actual profit is not required as long as the activity in question is one that constitutes a means of procuring subsistence or profit **and there is a motive to make a profit or, at a minimum, to cover costs and expenses.**"  *Id*. (emphasis added).

   A review of the underlying complaint reveals a notable absence of any factual allegations that bear directly on the motives of the Turners.  *See (*Doc. # 171-1 at 1-8.)  There are no factual allegations whatsoever indicating the Turners provided foster care services to make a profit, or to cover their expenses.  The complaint is simply silent with respect to the subjective intent of the Turners.

   Instead, the complaint on numerous occasions refers to the Turners as employees of SKSF, a non-profit organization that allegedly hired, trained, and supervised the Turners.  *See, e.g.,* (*Id*. at 2.)  Defendant's argument that the underlying complaint falls squarely within the "business pursuits" exclusion is predicated on those assertions of an employment relationship.

   As a preliminary matter, this Court is not convinced the existence of an employment relationship would necessarily place the complaint within the bounds of the "business pursuits" exclusion.  The policy defines "business" as "any profit motivated full or part-time employment."  (Doc. # 171-1 at 13.)  The language "profit motivated" modifies and limits the "employment" contemplated by the exclusion.  Defendant implies that all employment is inherently profit motivated.  But if an employee's motive to profit is inherent to employment, the language "profit motive" in this insurance contract would be superfluous and devoid of meaning.  *See Copper Mtn., Inc. v. Indus Systems, Inc.*,

208 P.3d 692, 697 (Colo. 2009) ("[A] court should interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless."). Because the policy specifically contemplates **profit motivated** employment, a showing of a bare employment relationship without evidence of the Turners' motive to profit or cover expenses would not place the complaint within the plain language of the exclusion.

Assuming *arguendo* that an employment relationship necessarily implies the Turners were motivated by profit, Defendant inappropriately relies on a conclusion of law asserted in the underlying complaint. Colorado courts have held that an underlying complaint's factual allegations, not its legal claims or conclusions, determine an insurer's defense obligations. *See, e.g., Gerrity Co., inc. v. CIGNA Prop. & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo. App. 1993) ("It is, however, the factual allegations in the complaint, not the legal claims, that determine an insurer's duty [to defend.]"); *Troelstrup v. Dist. Ct.*, 712 P.2d 1010, 1013 (Colo. 1986) (finding no coverage where underlying complaint against insured asserted claim for negligence but factual allegations sounded in intentional conduct); *see also Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011) (courts are "not required to accept as true legal conclusions that are couched as factual allegations."). Under Colorado law, it is beyond dispute that an individual's employment status is a question of law. *See Brush Hay & Mill, Co. v. Small*, 388 P.2d 84, 86 (Colo. 1963) ("[T]he issue as to whether Small was an employee of Brush Hay poses a question of law, not a question of fact."); *Brighton Sch. Dist. v. Lyons*, 873 P.2d 26, 28 (Colo. App. 1993) ("[T]he determination of

employment status is a question of law . . . ."). Accordingly, Defendant cannot rely on the bald legal claim in the underlying complaint that the Turners were employees of SKSF.

Instead, this Court must now consider whether the **factual** allegations in the underlying complaint compel a finding that the Turners were employees of SKSF. Under Colorado law, the central element of an employment relationship is the right of an alleged employer to control the details of performance. *Norton v. Gilman*, 949 P.2d 565, 567 (Colo. 1997). Other probative factors include the right to hire, the payment of salary, and the right to dismiss. *Id.* In this case, the underlying complaint alleges only that SKSF hired, trained, and supervised the Turners. (Doc. # 171-1 at 2.) The complaint alleges no facts suggesting SKSF had the right to control the details of the Turners' labor or to terminate the Turners. The complaint also fails to allege that SKSF paid the Turners wages or remuneration of any kind.

When an insurer relies on exclusions in a policy in order to avoid coverage, e.g., refusing to defend, the insurer must "establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretations." *Hecla*, 811 P.2d at 1090. Thus, the insurer must show that "the allegations in the complaint are solely and entirely within the exclusions in the insurance policy." Id. To the extent that there is any doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim. *See Sims v. Sperry*, 835 P.2d 565, 569 (Colo. App. 1992). In other words, Defendant can discharge its duty to defend only on a showing that the factual

allegations in the underlying complaint fall squarely within the exclusions of the policy and Defendant will not be excused from defending its insured if there are **any** factual or legal bases on which it might eventually be held liable to indemnify.

Defendant has argued that the underlying legal claim characterizing the Turners as SKSF employees or, in the alternative, the factual allegations implying an employment relationship, place the complaint entirely within the "business pursuits" exclusion. This Court concludes the existence of an employment relationship between the Turners and SKSF is an open question. If there is a plausible factual or legal basis to conclude that the Turners were in fact not employees of SKSF, then Defendant has failed to meet its heavy burden. Accordingly, the "business pursuits" exclusion did not discharge Defendant's duty to defend in the Underlying Lawsuit.

   b) *Intra-Insured Exclusion*

The "intra-insured" exclusion precludes coverage for any liability where the injured party bringing suit is an insured under the policy. (Doc. # 171-1 at 23.) The policy's definition of insured includes any person under the age of 21 in the care of the policyholders that is also a "resident" of the household. *(Id*. at 13). Put simply, the "intra-insured" exclusion would preclude coverage if the injured foster child was a "resident" of the Turner household at the time of his injury.

Colorado Courts have not determined whether, as a matter of law, foster children are residents of households providing their foster care. Instead, whether a person is a resident of an insured's household is determined under the facts and circumstances of each case. *Midwest Mut. Ins. Co. v. Titus*, 849 P.2d 908, 910 (Colo. App. 1993).

Relevant factors in a residency analysis include the (1) subjective or declared intent of the individual, (2) the relation between the individual and the members of the household, (3) the existence of a second place of lodging, and (4) the relative permanence or transient nature of the individual's residence in the household.  *Id*.

Again, in order to discharge its duty to defend, Defendant must show that the allegations in the underlying complaint fall squarely within the exclusions of the policy and Defendant will not be excused from its duty to defend if there are **any** factual or legal bases on which it might eventually be held liable to indemnify.  *See Hecla*, 811 P.2d at 1089.  To the extent that the allegations in the underlying complaint raise facts that are relevant to the residency inquiry, the conclusion one can draw is far from certain.  There are, however, facts that weigh against a determination that the foster child was a resident in the Turners' household.  It is beyond dispute that the child had a second place of lodging with his biological parents.  The duration of the child's stay was also a short five days.  (Doc. # 171-1 at 2.)  In fact, at the time the injury occurred, a court had already ordered the child to be returned to the custody of his parents.  (*Id*.)

A thorough review of the factual allegations in the underlying complaint makes clear that the residency of the foster child at the time of injury is a matter of legitimate dispute.  Thus, the Court finds that Defendant cannot credibly maintain there was no basis, either factual or legal, capable of placing the tendered claims outside of the bounds of the "intra-insured" exclusion.  Accordingly, Defendant has failed to meet its heavy burden and cannot discharge its duty to defend.

### IV. CONCLUSION

In accordance with its analysis and findings herein, this Court concludes Defendant had a duty to defend because the factual allegations in the underlying complaint do not fall solely and exclusively within the boundaries of the policy exclusions. It is for the jury to determine whether, under the facts of this case, Defendant had an obligation under the terms of its insurance policy to indemnify the Turners in the Underlying Lawsuit.

Based on the foregoing, the Court ORDERS that Defendant's Motion for Summary Judgment (Doc. # 171) is DENIED. It is

FURTHER ORDERED that Plaintiffs' Cross-Motion for Partial Summary Judgment (Doc. # 188) is GRANTED. Defendant had a duty to defend the Turners' in the Underlying Lawsuit.

DATED: February 22, 2016

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge